# UNITED STATES v. ROSS

No. 80–2209.　Argued March 1, 1982—Decided June 1, 1982

STEVENS, J., delivered the opinion of the Court, in which BURGER, C. J., and BLACKMUN, POWELL, REHNQUIST, and O'CONNOR, JJ., joined. BLACKMUN, J., *post*, p. 825, and POWELL, J., *post*, p. 826, filed concurring opinions. WHITE, J., filed a dissenting opinion, *post*, p. 826. MARSHALL, J., filed a dissenting opinion, in which BRENNAN, J., joined, *post*, p. 827.

*Deputy Solicitor General Frey* argued the cause for the United States. With him on the briefs were *Solicitor General Lee, Assistant Attorney General Jensen, Joshua I. Schwartz,* and *John Fichter De Pue.*

*William J. Garber* argued the cause for respondent. With him on the brief was *Dennis M. Hart.**

JUSTICE STEVENS delivered the opinion of the Court.

In *Carroll* v. *United States*, 267 U. S. 132, the Court held that a warrantless search of an automobile stopped by police officers who had probable cause to believe the vehicle contained contraband was not unreasonable within the meaning of the Fourth Amendment. The Court in *Carroll* did not ex-

---

**Fred E. Inbau, Wayne W. Schmidt,* and *James P. Manak* filed a brief for Americans for Effective Law Enforcement, Inc., et al., as *amici curiae* urging reversal.

*Raymond C. Clevenger III, John F. Cooney, Arthur B. Spitzer,* and *Charles S. Sims* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging affirmance.

plicitly address the scope of the search that is permissible. In this case, we consider the extent to which police officers— who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it—may conduct a probing search of compartments and containers within the vehicle whose contents are not in plain view. We hold that they may conduct a search of the vehicle that is as thorough as a magistrate could authorize in a warrant "particularly describing the place to be searched."[1]

## I

In the evening of November 27, 1978, an informant who had previously proved to be reliable telephoned Detective Marcum of the District of Columbia Police Department and told him that an individual known as "Bandit" was selling narcotics kept in the trunk of a car parked at 439 Ridge Street. The informant stated that he had just observed "Bandit" complete a sale and that "Bandit" had told him that additional narcotics were in the trunk. The informant gave Marcum a detailed description of "Bandit" and stated that the car was a "purplish maroon" Chevrolet Malibu with District of Columbia license plates.

Accompanied by Detective Cassidy and Sergeant Gonzales, Marcum immediately drove to the area and found a maroon Malibu parked in front of 439 Ridge Street. A license check disclosed that the car was registered to Albert Ross; a computer check on Ross revealed that he fit the informant's description and used the alias "Bandit." In two passes through the neighborhood the officers did not observe anyone matching the informant's description. To avoid alerting persons on the street, they left the area.

---

[1] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U. S. Const., Amdt. 4.

The officers returned five minutes later and observed the maroon Malibu turning off Ridge Street onto Fourth Street. They pulled alongside the Malibu, noticed that the driver matched the informant's description, and stopped the car. Marcum and Cassidy told the driver—later identified as Albert Ross, the respondent in this action—to get out of the vehicle. While they searched Ross, Sergeant Gonzales discovered a bullet on the car's front seat. He searched the interior of the car and found a pistol in the glove compartment. Ross then was arrested and handcuffed. Detective Cassidy took Ross' keys and opened the trunk, where he found a closed brown paper bag. He opened the bag and discovered a number of glassine bags containing a white powder. Cassidy replaced the bag, closed the trunk, and drove the car to headquarters.

At the police station Cassidy thoroughly searched the car. In addition to the "lunch-type" brown paper bag, Cassidy found in the trunk a zippered red leather pouch. He unzipped the pouch and discovered $3,200 in cash. The police laboratory later determined that the powder in the paper bag was heroin. No warrant was obtained.

Ross was charged with possession of heroin with intent to distribute, in violation of 21 U. S. C. § 841(a). Prior to trial, he moved to suppress the heroin found in the paper bag and the currency found in the leather pouch. After an evidentiary hearing, the District Court denied the motion to suppress. The heroin and currency were introduced in evidence at trial and Ross was convicted.

A three-judge panel of the Court of Appeals reversed the conviction. It held that the police had probable cause to stop and search Ross' car and that, under *Carroll* v. *United States, supra,* and *Chambers* v. *Maroney,* 399 U. S. 42, the officers lawfully could search the automobile—including its trunk—without a warrant. The court considered separately, however, the warrantless search of the two containers found in the trunk. On the basis of *Arkansas* v. *Sanders,*

442 U. S. 753, the court concluded that the constitutionality of a warrantless search of a container found in an automobile depends on whether the owner possesses a reasonable expectation of privacy in its contents. Applying that test, the court held that the warrantless search of the paper bag was valid but the search of the leather pouch was not. The court remanded for a new trial at which the items taken from the paper bag, but not those from the leather pouch, could be admitted.[2]

The entire Court of Appeals then voted to rehear the case en banc. A majority of the court rejected the panel's conclusion that a distinction of constitutional significance existed between the two containers found in respondent's trunk; it held that the police should not have opened either container without first obtaining a warrant. The court reasoned:

> "No specific, well-delineated exception called to our attention permits the police to dispense with a warrant to open and search 'unworthy' containers. Moreover, we believe that a rule under which the validity of a warrantless search would turn on judgments about the durability of a container would impose an unreasonable and unmanageable burden on police and courts. For these reasons, and because the Fourth Amendment protects all persons, not just those with the resources or fastidiousness to place their effects in containers that decisionmakers would rank in the luggage line, we hold that the Fourth Amendment warrant requirement forbids the warrantless opening of a closed, opaque paper bag to the same extent that it forbids the warrantless opening of a small unlocked suitcase or a zippered leather pouch." 210 U. S. App. D. C. 342, 344, 655 F. 2d 1159, 1161 (1981) (footnote omitted).

---

[2] The court rejected the Government's argument that the warrantless search of the leather pouch was justified as incident to respondent's arrest. App. to Pet. for Cert. 137a. The Government has not challenged this holding.

The en banc Court of Appeals considered, and rejected, the argument that it was reasonable for the police to open both the paper bag and the leather pouch because they were entitled to conduct a warrantless search of the entire vehicle in which the two containers were found. The majority concluded that this argument was foreclosed by *Sanders*.

Three dissenting judges interpreted *Sanders* differently.[3] Other courts also have read the *Sanders* opinion in different ways.[4] Moreover, disagreement concerning the proper interpretation of *Sanders* was at least partially responsible for the fact that *Robbins* v. *California*, 453 U. S. 420, was decided last Term without a Court opinion.

There is, however, no dispute among judges about the importance of striving for clarification in this area of the law. For countless vehicles are stopped on highways and public

---

[3] Judge Tamm, the author of the original panel opinion, reiterated the view that *Sanders* prohibited the warrantless search of the leather pouch but not the search of the paper bag. Judge Robb agreed that this result was compelled by *Sanders*, although he stated that in his opinion "the right to search an automobile should include the right to open any container found within the automobile, just as the right to search a lawfully arrested prisoner carries with it the right to examine the contents of his wallet and any envelope found in his pocket, and the right to search a room includes authority to open and search all the drawers and containers found within the room." 210 U. S. App. D. C., at 363, 655 F. 2d, at 1180. Judge MacKinnon concurred with Judge Tamm that *Sanders* did not prohibit the warrantless search of the paper bag. Concerning the leather pouch, he agreed with Judge Wilkey, who dissented on the ground that *Sanders* should not be applied retroactively.

[4] Many courts have held that *Sanders* requires that a warrant be obtained only for personal luggage and other "luggage-type" containers. See, *e. g., United States* v. *Brown*, 635 F. 2d 1207 (CA6 1980); *United States* v. *Jimenez*, 626 F. 2d 39 (CA7 1980). One court has held that *Sanders* does not apply if the police have probable cause to search an entire vehicle and not merely an isolated container within it. Cf. *State* v. *Bible*, 389 So. 2d 42 (La. 1980), vacated and remanded, 453 U. S. 918; *State* v. *Hernandez*, 408 So. 2d 911 (La. 1981); see also 210 U. S. App. D. C., at 363, 655 F. 2d, at 1180 (Robb, J., dissenting).

streets every day, and our cases demonstrate that it is not uncommon for police officers to have probable cause to believe that contraband may be found in a stopped vehicle. In every such case a conflict is presented between the individual's constitutionally protected interest in privacy and the public interest in effective law enforcement. No single rule of law can resolve every conflict, but our conviction that clarification is feasible led us to grant the Government's petition for certiorari in this case and to invite the parties to address the question whether the decision in *Robbins* should be reconsidered. 454 U. S. 891.

## II

We begin with a review of the decision in *Carroll* itself. In the fall of 1921, federal prohibition agents obtained evidence that George Carroll and John Kiro were "bootleggers" who frequently traveled between Grand Rapids and Detroit in an Oldsmobile Roadster.[5] On December 15, 1921, the agents unexpectedly encountered Carroll and Kiro driving west on that route in that car. The officers gave pursuit, stopped the roadster on the highway, and directed Carroll and Kiro to get out of the car.

No contraband was visible in the front seat of the Oldsmobile and the rear portion of the roadster was closed. One of the agents raised the rumble seat but found no liquor. He raised the seat cushion and again found nothing. The officer then struck at the "lazyback" of the seat and noticed that it was "harder than upholstery ordinarily is in those backs."

---

[5] On September 29, 1921, Carroll and Kiro met the agents in Grand Rapids and agreed to sell them three cases of whiskey. The sale was not consummated, however, possibly because Carroll learned the agents' true identity. In October, the agents discovered Carroll and Kiro driving the Oldsmobile Roadster on the road to Detroit, which was known as an active center for the introduction of illegal liquor into this country. The agents followed the roadster as far as East Lansing, but there abandoned the chase.

267 U. S., at 174.   He tore open the seat cushion and discovered 68 bottles of gin and whiskey concealed inside.   No warrant had been obtained for the search.

Carroll and Kiro were convicted of transporting intoxicating liquor in violation of the National Prohibition Act.   On review of those convictions, this Court ruled that the warrantless search of the roadster was reasonable within the meaning of the Fourth Amendment.   In an extensive opinion written by Chief Justice Taft, the Court held:

> "On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid.   The Fourth Amendment is to be construed in the light of what was deemed an unreasonable search and seizure when it was adopted, and in a manner which will conserve public interests as well as the interests and rights of individual citizens."   *Id.*, at 149.

The Court explained at length the basis for this rule.   The Court noted that historically warrantless searches of vessels, wagons, and carriages—as opposed to fixed premises such as a home or other building—had been considered reasonable by Congress.   After reviewing legislation enacted by Congress between 1789 and 1799,[6] the Court stated:

> "Thus contemporaneously with the adoption of the Fourth Amendment we find in the first Congress, and in the following Second and Fourth Congresses, a difference made as to the necessity for a search warrant be-

---

[6] The legislation authorized customs officials to search any ship or vessel without a warrant if they had probable cause to believe that it concealed goods subject to duty.   The same legislation required a warrant for searches of dwelling places.   267 U. S., at 150–151.

tween goods subject to forfeiture, when concealed in a dwelling house or similar place, and like goods in course of transportation and concealed in a movable vessel where they readily could be put out of reach of a search warrant." *Id.*, at 151.

The Court reviewed additional legislation passed by Congress[7] and again noted that

> "the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the Government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Id.*, at 153.

Thus, since its earliest days Congress had recognized the impracticability of securing a warrant in cases involving the transportation of contraband goods.[8] It is this impracticability, viewed in historical perspective, that provided the basis for the *Carroll* decision. Given the nature of an automobile in transit, the Court recognized that an immediate intrusion is necessary if police officers are to secure the illicit

---

[7] In particular, the Court noted an 1815 statute that permitted customs officers not only to board and search vessels without a warrant "but also to stop, search and examine any vehicle, beast or person on which or whom they should suspect there was merchandise which was subject to duty or had been introduced into the United States in any manner contrary to law." *Id.*, at 151.

[8] In light of this established history, individuals always had been on notice that movable vessels may be stopped and searched on facts giving rise to probable cause that the vehicle contains contraband, without the protection afforded by a magistrate's prior evaluation of those facts.

substance. In this class of cases, the Court held that a warrantless search of an automobile is not unreasonable.[9]

In defining the nature of this "exception" to the general rule that "[i]n cases where the securing of a warrant is reasonably practicable, it must be used," *id.*, at 156, the Court in *Carroll* emphasized the importance of the requirement that

[9] Subsequent cases make clear that the decision in *Carroll* was not based on the fact that the only course available to the police was an immediate search. As Justice Harlan later recognized, although a failure to *seize* a moving automobile believed to contain contraband might deprive officers of the illicit goods, once a vehicle itself has been stopped the exigency does not necessarily justify a warrantless *search*. *Chambers* v. *Maroney,* 399 U. S. 42, 62–64 (opinion of Harlan, J.). The Court in *Chambers,* however—with only Justice Harlan dissenting—refused to adopt a rule that would permit a warrantless seizure but prohibit a warrantless search. The Court held that if police officers have probable cause to justify a warrantless seizure of an automobile on a public roadway, they may conduct an immediate search of the contents of that vehicle. "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." *Id.,* at 52.

The Court also has held that if an immediate search on the street is permissible without a warrant, a search soon thereafter at the police station is permissible if the vehicle is impounded. *Chambers, supra; Texas* v. *White,* 423 U. S. 67. These decisions are based on the practicalities of the situations presented and a realistic appraisal of the relatively minor protection that a contrary rule would provide for privacy interests. Given the scope of the initial intrusion caused by a seizure of an automobile—which often could leave the occupants stranded on the highway—the Court rejected an inflexible rule that would force police officers in every case either to post guard at the vehicle while a warrant is obtained or to tow the vehicle itself to the station. Similarly, if an immediate search on the scene could be conducted, but not one at the station if the vehicle is impounded, police often simply would search the vehicle on the street—at no advantage to the occupants, yet possibly at certain cost to the police. The rules as applied in particular cases may appear unsatisfactory. They reflect, however, a reasoned application of the more general rule that if an individual gives the police probable cause to believe a vehicle is transporting contraband, he loses the right to proceed on his way without official interference.

officers have probable cause to believe that the vehicle contains contraband.

> "Having thus established that contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant, we come now to consider under what circumstances such search may be made. It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search. Travellers may be so stopped in crossing an international boundary because of national self protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in. But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise." *Id.*, at 153–154.

Moreover, the probable-cause determination must be based on objective facts that could justify the issuance of a warrant by a magistrate and not merely on the subjective good faith of the police officers. " '[A]s we have seen, good faith is not enough to constitute probable cause. That faith must be grounded on facts within knowledge of the [officer], which in the judgment of the court would make his faith reasonable.' " *Id.*, at 161–162 (quoting *Director General of Railroads* v. *Kastenbaum*, 263 U. S. 25, 28).[10]

---

[10] After reviewing the relevant authorities at some length, the Court concluded that the probable-cause requirement was satisfied in the case before it. The Court held that "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief

In short, the exception to the warrant requirement established in *Carroll*—the scope of which we consider in this case—applies only to searches of vehicles that are supported by probable cause.[11]   In this class of cases, a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained.[12]

## III

The rationale justifying a warrantless search of an automobile that is believed to be transporting contraband arguably applies with equal force to any movable container that is believed to be carrying an illicit substance.   That argument,

---

that intoxicating liquor was being transported in the automobile which they stopped and searched." 267 U. S., at 162.   Cf. *Brinegar* v. *United States*, 338 U. S. 160, 176–177; *Henry* v. *United States*, 361 U. S. 98, 102.

[11] See *Husty* v. *United States*, 282 U. S. 694; *Scher* v. *United States*, 305 U. S. 251; *Brinegar* v. *United States, supra; Henry* v. *United States, supra; Dyke* v. *Taylor Implement Mfg. Co.*, 391 U. S. 216; *Chambers* v. *Maroney, supra; Texas* v. *White, supra; Colorado* v. *Bannister*, 449 U. S. 1.

Warrantless searches of automobiles have been upheld in a variety of factual contexts quite different from that presented in *Carroll*.   Cf. *Cooper* v. *California*, 386 U. S. 58; *Cady* v. *Dombrowski*, 413 U. S. 433; *South Dakota* v. *Opperman*, 428 U. S. 364.   Many of these searches do not require a showing of probable cause that the vehicle contains contraband.   We are not called upon to—and do not—consider in this case the scope of the warrantless search that is permitted in those cases.

[12] As the Court in *Carroll* concluded:

"We here find the line of distinction between legal and illegal seizures of liquor in transport in vehicles.   It is certainly a reasonable distinction.   It gives the owner of an automobile or other vehicle seized under Section 26, in absence of probable cause, a right to have restored to him the automobile, it protects him under the *Weeks* [*Weeks* v. *United States*, 232 U. S. 383] and *Amos* [*Amos* v. *United States*, 255 U. S. 313] cases from use of the liquor as evidence against him, and it subjects the officer making the seizures to damages.   On the other hand, in a case showing probable cause, the Government and its officials are given the opportunity which they should have, to make the investigation necessary to trace reasonably suspected contraband goods and to seize them." 267 U. S., at 156.

however, was squarely rejected in *United States* v. *Chadwick*, 433 U. S. 1.

*Chadwick* involved the warrantless search of a 200-pound footlocker secured with two padlocks. Federal railroad officials in San Diego became suspicious when they noticed that a brown footlocker loaded onto a train bound for Boston was unusually heavy and leaking talcum powder, a substance often used to mask the odor of marihuana. Narcotics agents met the train in Boston and a trained police dog signaled the presence of a controlled substance inside the footlocker. The agents did not seize the footlocker, however, at this time; they waited until respondent Chadwick arrived and the footlocker was placed in the trunk of Chadwick's automobile. Before the engine was started, the officers arrested Chadwick and his two companions. The agents then removed the footlocker to a secured place, opened it without a warrant, and discovered a large quantity of marihuana.

In a subsequent criminal proceeding, Chadwick claimed that the warrantless search of the footlocker violated the Fourth Amendment. In the District Court, the Government argued that as soon as the footlocker was placed in the automobile a warrantless search was permissible under *Carroll.* The District Court rejected that argument,[13] and the Government did not pursue it on appeal.[14] Rather, the Government contended in this Court that the warrant requirement of the Fourth Amendment applied only to searches of homes and

---

[13] The District Court noted:

"In this case, there was no nexus between the search and the automobile, merely a coincidence. The challenged search in this case was one of a footlocker, not an automobile. The search took place not in an automobile, but in [the federal building]. The only connection that the automobile had to this search was that, prior to its seizure, the footlocker was placed on the floor of an automobile's open trunk." *United States* v. *Chadwick*, 393 F. Supp. 763, 772 (Mass. 1975).

[14] This Court specifically noted: "The Government does not contend that the footlocker's brief contact with Chadwick's car makes this an automobile search, but it is argued that the rationale of our automobile search cases

other "core" areas of privacy. The Court unanimously rejected that contention.[15] Writing for the Court, THE CHIEF JUSTICE stated:

> "[I]f there is little evidence that the Framers intended the Warrant Clause to operate outside the home, there is no evidence at all that they intended to exclude from protection of the Clause all searches occurring outside the home. The absence of a contemporary outcry against warrantless searches in public places was because, aside from searches incident to arrest, such warrantless searches were not a large issue in colonial America. Thus, silence in the historical record tells us little about the Framers' attitude toward application of the Warrant Clause to the search of respondents' footlocker. What we do know is that the Framers were men who focused on the wrongs of that day but who intended the Fourth Amendment to safeguard fundamental values which would far outlast the specific abuses which gave it birth." 433 U. S., at 8–9 (footnote omitted).

The Court in *Chadwick* specifically rejected the argument that the warrantless search was "reasonable" because a footlocker has some of the mobile characteristics that support warrantless searches of automobiles. The Court recognized that "a person's expectations of privacy in personal luggage are substantially greater than in an automobile," *id.*, at 13, and noted that the practical problems associated with the temporary detention of a piece of luggage during the period of time necessary to obtain a warrant are significantly less than those associated with the detention of an automobile. *Id.*, at 13, n. 7. In ruling that the warrantless search of the

---

demonstrates the reasonableness of permitting warrantless searches of luggage; the Government views such luggage as analagous to motor vehicles for Fourth Amendment purposes." 433 U. S., at 11–12.

[15] See *id.*, at 17 (BLACKMUN, J., dissenting).

footlocker was unjustified, the Court reaffirmed the general principle that closed packages and containers may not be searched without a warrant. Cf. *Ex parte Jackson*, 96 U. S. 727; *United States* v. *Van Leeuwen*, 397 U. S. 249. In sum, the Court in *Chadwick* declined to extend the rationale of the "automobile exception" to permit a warrantless search of any movable container found in a public place.[16]

The facts in *Arkansas* v. *Sanders*, 442 U. S. 753, were similar to those in *Chadwick*. In *Sanders*, a Little Rock police officer received information from a reliable informant that Sanders would arrive at the local airport on a specified flight that afternoon carrying a green suitcase containing marihuana. The officer went to the airport. Sanders arrived on schedule and retrieved a green suitcase from the airline baggage service. Sanders gave the suitcase to a waiting companion, who placed it in the trunk of a taxi. Sanders and his companion drove off in the cab; police officers followed and stopped the taxi several blocks from the airport. The officers opened the trunk, seized the suitcase, and searched it on the scene without a warrant. As predicted, the suitcase contained marihuana.

The Arkansas Supreme Court ruled that the warrantless search of the suitcase was impermissible under the Fourth Amendment, and this Court affirmed. As in *Chadwick*, the mere fact that the suitcase had been placed in the trunk of the vehicle did not render the automobile exception of *Carroll* applicable; the police had probable cause to seize the suitcase before it was placed in the trunk of the cab and did not

---

[16] The Court concluded that there is a significant difference between the seizure of a sealed package and a subsequent search of its contents; the search of the container in that case was "a far greater intrusion into Fourth Amendment values than the impoundment of the footlocker." *Id.*, at 14, n. 8. A temporary seizure of a package or piece of luggage often may be accomplished without as significant an intrusion upon the individual—and without as great a burden on the police—as in the case of the seizure of an automobile. See n. 9, *supra.*

have probable cause to search the taxi itself.[17]  Since the suitcase had been placed in the trunk, no danger existed that its contents could have been secreted elsewhere in the vehicle.[18]  As THE CHIEF JUSTICE noted in his opinion concurring in the judgment:

> "Because the police officers had probable cause to believe that respondent's green suitcase contained marihuana before it was placed in the trunk of the taxicab, their duty to obtain a search warrant before opening it is clear under *United States* v. *Chadwick*, 433 U. S. 1 (1977). . . .
>
> ". . . Here, as in *Chadwick*, it was the *luggage* being transported by respondent at the time of the arrest, not the automobile in which it was being carried, that was the suspected locus of the contraband.  The relationship between the automobile and the contraband was purely coincidental, as in *Chadwick*.  The fact that the suitcase was resting in the trunk of the automobile at the time of respondent's arrest does not turn this into an 'automobile' exception case.  The Court need say no more." 442 U. S., at 766–767.

The Court in *Sanders* did not, however, rest its decision solely on the authority of *Chadwick*.  In rejecting the State's

---

[17] The Arkansas Supreme Court carefully reviewed the facts of the case and concluded: "The information supplied to the police by the confidential informant is adequate to support the State's claim that the police had probable cause to believe that appellant's green suitcase contained a controlled substance when the police confiscated the suitcase and opened it." *Sanders* v. *State*, 262 Ark. 595, 599, 559 S. W. 2d 704, 706 (1977).  The court also noted: "The evidence in this case supports the conclusion that the relationship between the suitcase and the taxicab is coincidental." *Id.*, at 600, n. 2, 559 S. W. 2d, at 706, n. 2.

[18] Moreover, none of the practical difficulties associated with the detention of a vehicle on a public highway that made the immediate search in *Carroll* reasonable could justify an immediate search of the suitcase, since the officers had no interest in detaining the taxi or its driver.

argument that the warrantless search of the suitcase was justified on the ground that it had been taken from an automobile lawfully stopped on the street, the Court broadly suggested that a warrantless search of a container found in an automobile could never be sustained as part of a warrantless search of the automobile itself.[19]   The Court did not suggest that it mattered whether probable cause existed to search the entire vehicle.   It is clear, however, that in neither *Chadwick* nor *Sanders* did the police have probable cause to search the vehicle or anything within it except the footlocker in the former case and the green suitcase in the latter.

*Robbins* v. *California*, 453 U. S. 420, however, was a case in which suspicion was not directed at a specific container. In that case the Court for the first time was forced to consider whether police officers who are entitled to conduct a warrantless search of an automobile stopped on a public roadway may open a container found within the vehicle.   In the early morning of January 5, 1975, police officers stopped Robbins' station wagon because he was driving erratically. Robbins got out of the car, but later returned to obtain the vehicle's registration papers.   When he opened the car door, the officers smelled marihuana smoke.   One of the officers searched Robbins and discovered a vial of liquid; in a search of the interior of the car the officer found marihuana.   The police officers then opened the tailgate of the station wagon and raised the cover of a recessed luggage compartment.   In

---

[19] The Court stated that "the extent to which the Fourth Amendment applies to containers and other parcels depends not at all upon whether they are seized from an automobile."   442 U. S., at 764, n. 13.   This general rule was limited only by the observation that "[n]ot all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment.   Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance.   Similarly, in some cases the contents of a package will be open to 'plain view,' thereby obviating the need for a warrant."   *Ibid.*

the compartment they found two packages wrapped in green opaque plastic. The police unwrapped the packages and discovered a large amount of marihuana in each.

Robbins was charged with various drug offenses and moved to suppress the contents of the plastic packages. The California Court of Appeal held that "[s]earch of the automobile was proper when the officers learned that appellant was smoking marijuana when they stopped him"[20] and that the warrantless search of the packages was justified because "the contents of the packages could have been inferred from their outward appearance, so that appellant could not have held a reasonable expectation of privacy with respect to the contents." *People* v. *Robbins,* 103 Cal. App. 3d 34, 40, 162 Cal. Rptr. 780, 783 (1980).

This Court reversed. Writing for a plurality, Justice Stewart rejected the argument that the outward appearance of the packages precluded Robbins from having a reasonable expectation of privacy in their contents. He also squarely rejected the argument that there is a constitutional distinction between searches of luggage and searches of "less worthy" containers. Justice Stewart reasoned that all containers are equally protected by the Fourth Amendment unless their contents are in plain view. The plurality concluded that the warrantless search was impermissible because *Chadwick* and *Sanders* had established that "a closed piece of luggage found in a lawfully searched car is constitutionally protected to the same extent as are closed pieces of luggage found anywhere else." 453 U. S., at 425.

In an opinion concurring in the judgment, JUSTICE POWELL, the author of the Court's opinion in *Sanders,* stated that "[t]he plurality's approach strains the rationales of our prior cases and imposes substantial burdens on law enforcement without vindicating any significant values of privacy." 453

---

[20] *People* v. *Robbins,* 103 Cal. App. 3d 34, 39, 162 Cal. Rptr. 780, 782 (1980).

U. S., at 429.[21]    He noted that possibly "the controlling question should be the scope of the automobile exception to the warrant requirement," *id.*, at 435, and explained that under that view

> "when the police have probable cause to search an automobile, rather than only to search a particular container that fortuitously is located in it, the exigencies that allow the police to search the entire automobile without a warrant support the warrantless search of every container found therein.    See *post*, at 451, and n. 13 (STEVENS, J., dissenting).    This analysis is entirely consistent with the holdings in *Chadwick* and *Sanders*, neither of which is an 'automobile case,' because the police there had probable cause to search the double-locked footlocker and the suitcase respectively before either came near an automobile." *Ibid.*

The parties in *Robbins* had not pressed that argument, how-

---

[21] "While the plurality's blanket warrant requirement does not even purport to protect any privacy interest, it would impose substantial new burdens on law enforcement.    Confronted with a cigar box or a Dixie cup in the course of a probable-cause search of an automobile for narcotics, the conscientious policeman would be required to take the object to a magistrate, fill out the appropriate forms, await the decision, and finally obtain the warrant.    Suspects or vehicles normally will be detained while the warrant is sought.    This process may take hours, removing the officer from his normal police duties.    Expenditure of such time and effort, drawn from the public's limited resources for detecting or preventing crimes, is justified when it protects an individual's reasonable privacy interests.    In my view, the plurality's requirement cannot be so justified.    The aggregate burden of procuring warrants whenever an officer has probable cause to search the most trivial container may be heavy and will not be compensated by the advancement of important Fourth Amendment values."    453 U. S., at 433–434 (POWELL, J., concurring in judgment).

The substantial burdens on law enforcement identified by JUSTICE POWELL would, of course, not be affected by the character of the container found during an automobile search.    No comparable practical problems arise when the official suspicion is confined to a particular piece of luggage, as in *Chadwick* and *Sanders*.    Cf. n. 19, *supra.*

ever, and JUSTICE POWELL concluded that institutional constraints made it inappropriate to reexamine basic doctrine without full adversary presentation. He concurred in the judgment, since it was supported—although not compelled—by the Court's opinion in *Sanders*, and stated that a future case might present a better opportunity for thorough consideration of the basic principles in this troubled area.

That case has arrived. Unlike *Chadwick* and *Sanders*, in this case police officers had probable cause to search respondent's entire vehicle.[22] Unlike *Robbins*, in this case the parties have squarely addressed the question whether, in the course of a legitimate warrantless search of an automobile, police are entitled to open containers found within the vehicle. We now address that question. Its answer is determined by the scope of the search that is authorized by the exception to the warrant requirement set forth in *Carroll*.

## IV

In *Carroll* itself, the whiskey that the prohibition agents seized was not in plain view. It was discovered only after an officer opened the rumble seat and tore open the upholstery of the lazyback. The Court did not find the scope of the search unreasonable. Having stopped Carroll and Kiro on a public road and subjected them to the indignity of a ve-

---

[22] The en banc Court of Appeals stated that "[b]ased on the tip the police received, Ross's car was properly stopped and searched, and the pouch and bag were properly seized." 210 U. S. App. D. C., at 361, 655 F. 2d, at 1168 (footnote omitted). The court explained:

"[W]e believe it clear that the police had ample and reasonable cause to stop Ross and to search his car. The informer had supplied accurate information on prior occasions, and he was an eyewitness to sales of narcotics by Ross. He said he had just seen Ross take narcotics from the trunk of his car in making a sale and heard him say he possessed additional narcotics." *Id.*, at 361, n. 22, 655 F. 2d, at 1168, n. 22.

The court further noted: "In this case, the informant told the police that Ross had narcotics in the trunk of his car. No specific container was identified." *Id.*, at 359, 655 F. 2d, at 1166.

hicle search—which the Court found to be a reasonable intrusion on their privacy because it was based on probable cause that their vehicle was transporting contraband—prohibition agents were entitled to tear open a portion of the roadster itself. The scope of the search was no greater than a magistrate could have authorized by issuing a warrant based on the probable cause that justified the search. Since such a warrant could have authorized the agents to open the rear portion of the roadster and to rip the upholstery in their search for concealed whiskey, the search was constitutionally permissible.

In *Chambers* v. *Maroney* the police found weapons and stolen property "concealed in a compartment under the dashboard." 399 U. S., at 44. No suggestion was made that the scope of the search was impermissible. It would be illogical to assume that the outcome of *Chambers*—or the outcome of *Carroll* itself—would have been different if the police had found the secreted contraband enclosed within a secondary container and had opened that container without a warrant. If it was reasonable for prohibition agents to rip open the upholstery in *Carroll*, it certainly would have been reasonable for them to look into a burlap sack stashed inside; if it was reasonable to open the concealed compartment in *Chambers*, it would have been equally reasonable to open a paper bag crumpled within it. A contrary rule could produce absurd results inconsistent with the decision in *Carroll* itself.

In its application of *Carroll*, this Court in fact has sustained warrantless searches of containers found during a lawful search of an automobile. In *Husty* v. *United States*, 282 U. S. 694, the Court upheld a warrantless seizure of whiskey found during a search of an automobile, some of which was discovered in "whiskey bags" that could have contained other goods.[23] In *Scher* v. *United States*, 305 U. S. 251, federal of-

---

[23] At the suppression hearing, defense counsel asked the police officer who had conducted the search: "Isn't it possible to put other goods in a bag that has the resemblance of a whiskey bag?" The officer responded: "I

ficers seized and searched packages of unstamped liquor found in the trunk of an automobile searched without a warrant. As described by a police officer who participated in the search: "I turned the handle and opened the trunk and found the trunk completely filled with packages wrapped in brown paper, and tied with twine; I think somewhere around thirty packages, each one containing six bottles."[24] In these cases it was not contended that police officers needed a warrant to open the whiskey bags or to unwrap the brown paper packages. These decisions nevertheless "have much weight, as they show that this point neither occurred to the bar or the bench." *Bank of the United States* v. *Deveaux*, 5 Cranch 61, 88 (Marshall, C. J.). The fact that no such argument was even made illuminates the profession's understanding of the scope of the search permitted under *Carroll*. Indeed, prior to the decisions in *Chadwick* and *Sanders*, courts routinely had held that containers and packages found during a legitimate warrantless search of an automobile also could be searched without a warrant.[25]

---

suppose it is. I did not think of that at that time. I knew it was whiskey, I was sure it was." App., O. T. 1930, No. 477, p. 27.

[24] App., O. T. 1938, No. 49, p. 33. The brief of then Solicitor General Robert Jackson noted that the items searched "were wrapped in very heavy brown wrapping paper with at least two wrappings and with a heavy cord around them cross-wise so that they could readily be lifted." Brief for United States, O. T. 1938, No. 49, p. 6.

[25] See, *e. g.*, *United States* v. *Soriano*, 497 F. 2d 147, 149–150 (CA5 1974) (en banc); *United States* v. *Vento*, 533 F. 2d 838, 867, n. 101 (CA3 1976); *United States* v. *Tramunti*, 513 F. 2d 1087, 1104 (CA2 1975); *United States* v. *Issod*, 508 F. 2d 990, 993 (CA7 1974); *United States* v. *Evans*, 481 F. 2d 990, 994 (CA9 1973); *United States* v. *Bowman*, 487 F. 2d 1229 (CA10 1973). Many courts continued to apply this rule following the decision in *Chadwick*. Cf. *United States* v. *Milhollan*, 599 F. 2d 518, 526–527 (CA3 1979); *United States* v. *Gaultney*, 581 F. 2d 1137, 1144–1145 (CA5 1978); *United States* v. *Finnegan*, 568 F. 2d 637, 640–641 (CA9 1977). In ruling that police could search luggage and other containers found during a legitimate warrantless search of an automobile, courts often assumed that the "automobile exception" of *Carroll* applied whenever a container in an automobile was believed to contain contraband. That view, of course, has since been qualified by *Chadwick* and *Sanders*.

As we have stated, the decision in *Carroll* was based on the Court's appraisal of practical considerations viewed in the perspective of history. It is therefore significant that the practical consequences of the *Carroll* decision would be largely nullified if the permissible scope of a warrantless search of an automobile did not include containers and packages found inside the vehicle. Contraband goods rarely are strewn across the trunk or floor of a car; since by their very nature such goods must be withheld from public view, they rarely can be placed in an automobile unless they are enclosed within some form of container.[26] The Court in *Carroll* held that "contraband goods *concealed* and illegally transported in an automobile or other vehicle may be searched for without a warrant." 267 U. S., at 153 (emphasis added). As we noted in *Henry* v. *United States*, 361 U. S. 98, 104, the decision in *Carroll* "merely relaxed the requirements for a warrant on grounds of practicability." It neither broadened nor limited the scope of a lawful search based on probable cause.

A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of en-

---

[26] It is noteworthy that the early legislation on which the Court relied in *Carroll* concerned the enforcement of laws imposing duties on imported merchandise. See nn. 6 and 7, *supra*. Presumably such merchandise was shipped then in containers of various kinds, just as it is today. Since Congress had authorized warrantless searches of vessels and beasts for imported merchandise, it is inconceivable that it intended a customs officer to obtain a warrant for every package discovered during the search; certainly Congress intended customs officers to open shipping containers when necessary and not merely to examine the exterior of cartons or boxes in which smuggled goods might be concealed. During virtually the entire history of our country—whether contraband was transported in a horse-drawn carriage, a 1921 roadster, or a modern automobile—it has been assumed that a lawful search of a vehicle would include a search of any container that might conceal the object of the search.

try or opening may be required to complete the search.[27] Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marihuana would also authorize the opening of packages found inside. A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search. When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.[28]

---

[27] In describing the permissible scope of a search of a home pursuant to a warrant, Professor LaFave notes:

"Places within the described premises are not excluded merely because some additional act of entry or opening may be required. 'In countless cases in which warrants described only the land and the buildings, a search of desks, cabinets, closets and similar items has been permitted.'" 2 W. LaFave, Search and Seizure 152 (1978) (quoting *Massey* v. *Commonwealth*, 305 S. W. 2d 755, 756 (Ky. 1957)).

[28] The practical considerations that justify a warrantless search of an automobile continue to apply until the entire search of the automobile and its contents has been completed. Arguably, the entire vehicle itself (including its upholstery) could be searched without a warrant, with all wrapped articles and containers found during that search then taken to a magistrate. But prohibiting police from opening immediately a container in which the object of the search is most likely to be found and instead forcing them first to comb the entire vehicle would actually exacerbate the intrusion on privacy interests. Moreover, until the container itself was opened the police could never be certain that the contraband was not secreted in a yet undiscovered portion of the vehicle; thus in every case in which a container was found, the vehicle would need to be secured while a warrant was obtained. Such a requirement would be directly inconsistent with the rationale supporting the decisions in *Carroll* and *Chambers*. Cf. nn. 19 and 22, *supra*.

This rule applies equally to all containers, as indeed we believe it must. One point on which the Court was in virtually unanimous agreement in *Robbins* was that a constitutional distinction between "worthy" and "unworthy" containers would be improper.[29] Even though such a distinction perhaps could evolve in a series of cases in which paper bags, locked trunks, lunch buckets, and orange crates were placed on one side of the line or the other,[30] the central purpose of the Fourth Amendment forecloses such a distinction. For just as the most frail cottage in the kingdom is absolutely entitled to the same guarantees of privacy as the most majestic mansion,[31] so also may a traveler who carries a toothbrush and a few articles of clothing in a paper bag or knotted scarf claim an equal right to conceal his possessions from official inspection as the sophisticated executive with the locked attaché case.

As Justice Stewart stated in *Robbins*, the Fourth Amendment provides protection to the owner of every container

---

[29] Cf. 453 U. S., at 426–427 (plurality opinion); *id.*, at 436 (BLACKMUN, J., dissenting); *id.*, at 443 (REHNQUIST, J., dissenting); *id.*, at 447 (STEVENS, J., dissenting).

[30] If the distinction is based on the proposition that the Fourth Amendment protects only those containers that objectively manifest an individual's reasonable expectation of privacy, however, the propriety of a warrantless search necessarily would turn on much more than the fabric of the container. A paper bag stapled shut and marked "private" might be found to manifest a reasonable expectation of privacy, as could a cardboard box stacked on top of two pieces of heavy luggage. The propriety of the warrantless search seemingly would turn on an objective appraisal of all the surrounding circumstances.

[31] " 'The poorest man may in his cottage bid defiance to all the forces of the Crown. It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter; but the King of England cannot enter—all his force dares not cross the threshold of the ruined tenement!' " *Miller* v. *United States*, 357 U. S. 301, 307 (quoting remarks attributed to William Pitt); cf. *Payton* v. *New York*, 445 U. S. 573, 601, n. 54.

that conceals its contents from plain view. 453 U. S., at 427 (plurality opinion). But the protection afforded by the Amendment varies in different settings. The luggage carried by a traveler entering the country may be searched at random by a customs officer; the luggage may be searched no matter how great the traveler's desire to conceal the contents may be. A container carried at the time of arrest often may be searched without a warrant and even without any specific suspicion concerning its contents. A container that may conceal the object of a search authorized by a warrant may be opened immediately; the individual's interest in privacy must give way to the magistrate's official determination of probable cause.

In the same manner, an individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband. Certainly the privacy interests in a car's trunk or glove compartment may be no less than those in a movable container. An individual undoubtedly has a significant interest that the upholstery of his automobile will not be ripped or a hidden compartment within it opened. These interests must yield to the authority of a search, however, which—in light of *Carroll*—does not itself require the prior approval of a magistrate. The scope of a warrantless search based on probable cause is no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause. Only the prior approval of the magistrate is waived; the search otherwise is as the magistrate could authorize.[32]

---

[32] In choosing to search without a warrant on their own assessment of probable cause, police officers of course lose the protection that a warrant would provide to them in an action for damages brought by an individual claiming that the search was unconstitutional. Cf. *Monroe* v. *Pape,* 365 U. S. 167. Although an officer may establish that he acted in good faith in conducting the search by other evidence, a warrant issued by a magistrate normally suffices to establish it.

The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase. Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab.

## V

Our decision today is inconsistent with the disposition in *Robbins* v. *California* and with the portion of the opinion in *Arkansas* v. *Sanders* on which the plurality in *Robbins* relied. Nevertheless, the doctrine of *stare decisis* does not preclude this action. Although we have rejected some of the reasoning in *Sanders*, we adhere to our holding in that case; although we reject the precise holding in *Robbins*, there was no Court opinion supporting a single rationale for its judgment, and the reasoning we adopt today was not presented by the parties in that case. Moreover, it is clear that no legitimate reliance interest can be frustrated by our decision today.[33] Of greatest importance, we are convinced that the rule we apply in this case is faithful to the interpretation of the Fourth Amendment that the Court has followed with substantial consistency throughout our history.

We reaffirm the basic rule of Fourth Amendment jurisprudence stated by Justice Stewart for a unanimous Court in *Mincey* v. *Arizona*, 437 U. S. 385, 390:

---

[33] Any interest in maintaining the status quo that might be asserted by persons who may have structured their business of distributing narcotics or other illicit substances on the basis of judicial precedents clearly would not be legitimate.

> "The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' *Katz* v. *United States*, 389 U. S. 347, 357 (footnotes omitted)."

The exception recognized in *Carroll* is unquestionably one that is "specifically established and well delineated." We hold that the scope of the warrantless search authorized by that exception is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.

The judgment of the Court of Appeals is reversed. The case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BLACKMUN, concurring.

My dissents in prior cases have indicated my continuing dissatisfaction and discomfort with the Court's vacillation in what is rightly described as "this troubled area." *Ante*, at 817. See *United States* v. *Chadwick*, 433 U. S. 1, 17 (1977); *Arkansas* v. *Sanders*, 442 U. S. 753, 768 (1979); *Robbins* v. *California*, 453 U. S. 420, 436 (1981).

I adhere to the views expressed in those dissents. It is important, however, not only for the Court as an institution, but also for law enforcement officials and defendants, that the applicable legal rules be clearly established. JUSTICE STEVENS' opinion for the Court now accomplishes much in this respect, and it should clarify a good bit of the confusion that has existed. In order to have an authoritative ruling, I join the Court's opinion and judgment.

JUSTICE POWELL, concurring.

In my opinion in *Robbins* v. *California,* 453 U. S. 420, 429 (1981), concurring in the judgment, I stated that the judgment was justified, though not compelled, by the Court's opinion in *Arkansas* v. *Sanders,* 442 U. S. 753 (1979). I did not agree, however, with the "bright line" rule articulated by the plurality opinion. Rather, I repeated the view I long have held that one's "reasonable expectation of privacy" is a particularly relevant factor in determining the validity of a warrantless search. I have recognized that, with respect to automobiles in general, this expectation can be only a limited one. See *Arkansas* v. *Sanders, supra,* at 761; *Almeida-Sanchez* v. *United States,* 413 U. S. 266, 279 (1973) (POWELL, J., concurring). I continue to think that in many situations one's reasonable expectation of privacy may be a decisive factor in a search case.

It became evident last Term, however, from the five opinions written in *Robbins*—in none of which THE CHIEF JUSTICE joined—that it is essential to have a Court opinion in *automobile* search cases that provides "specific guidance to police and courts in this recurring situation." *Robbins* v. *California, supra,* at 435 (POWELL, J., concurring in judgment). The Court's opinion today, written by JUSTICE STEVENS and now joined by THE CHIEF JUSTICE and four other Justices, will afford this needed guidance. It is fair also to say that, given *Carroll* v. *United States,* 267 U. S. 132 (1925), and *Chambers* v. *Maroney,* 399 U. S. 42 (1970), the Court's decision does not depart substantially from Fourth Amendment doctrine in automobile cases. Moreover, in enunciating a readily understood and applied rule, today's decision is consistent with the similar step taken last Term in *New York* v. *Belton,* 453 U. S. 454 (1981).

I join the Court's opinion.

JUSTICE WHITE, dissenting.

I would not overrule *Robbins* v. *California,* 453 U. S. 420 (1981). For the reasons stated by Justice Stewart in that

case, I would affirm the judgment of the Court of Appeals. I also agree with much of JUSTICE MARSHALL's dissent in this case.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

The majority today not only repeals all realistic limits on warrantless automobile searches, it repeals the Fourth Amendment warrant requirement itself. By equating a police officer's estimation of probable cause with a magistrate's, the Court utterly disregards the value of a neutral and detached magistrate. For as we recently, and unanimously, reaffirmed:

> "The warrant traditionally has represented an independent assurance that a search and arrest will not proceed without probable cause to believe that a crime has been committed and that the person or place named in the warrant is involved in the crime. Thus, an issuing magistrate must meet two tests. He must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest or search. This Court long has insisted that inferences of probable cause be drawn by 'a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'" *Shadwick* v. *City of Tampa*, 407 U. S. 345, 350 (1972), quoting *Johnson* v. *United States*, 333 U. S. 10, 14 (1948).

A police officer on the beat hardly satisfies these standards. In adopting today's new rule, the majority opinion shows contempt for these Fourth Amendment values, ignores this Court's precedents, is internally inconsistent, and produces anomalous and unjust consequences. I therefore dissent.

## I

According to the majority, whenever police have probable cause to believe that contraband may be found within an

automobile that they have stopped on the highway,[1] they may search not only the automobile but also any container found inside it, without obtaining a warrant. The scope of the search, we are told, is as broad as a magistrate could authorize in a warrant to search the automobile. The majority makes little attempt to justify this rule in terms of recognized Fourth Amendment values. The Court simply ignores the critical function that a magistrate serves. And although the Court purports to rely on the mobility of an automobile and the impracticability of obtaining a warrant, it never explains why these concerns permit the warrantless search of a *container*, which can easily be seized and immobilized while police are obtaining a warrant.

The new rule adopted by the Court today is completely incompatible with established Fourth Amendment principles, and takes a first step toward an unprecedented "probable cause" exception to the warrant requirement. In my view, under accepted standards, the warrantless search of the containers in this case clearly violates the Fourth Amendment.

## A

"[I]t is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Mincey* v. *Arizona*, 437 U. S. 385, 390 (1978), quoting *Katz* v. *United States*, 389 U. S. 347, 357 (1967). The warrant requirement is crucial to protecting Fourth Amendment rights because of the importance of having the probable-cause determination made in the first instance by a neutral and detached magistrate. Time and

---

[1] The Court confines its holding today to automobiles stopped on the highway which police have probable cause to believe contain contraband. I do not understand the Court to address the applicability of the automobile exception rule announced today to parked cars. Cf. *Coolidge* v. *New Hampshire*, 403 U. S. 443 (1971).

again, we have emphasized that the warrant requirement provides a number of protections that a *post hoc* judicial evaluation of a policeman's probable cause does not.

The requirement of prior review by a detached and neutral magistrate limits the concentration of power held by executive officers over the individual, and prevents some overbroad or unjustified searches from occurring at all. See *United States* v. *United States District Court*, 407 U. S. 297, 317 (1972); *Abel* v. *United States*, 362 U. S. 217, 252 (1960) (BRENNAN, J., joined by Warren, C. J., and Black and Douglas, JJ., dissenting). Prior review may also "prevent hindsight from coloring the evaluation of the reasonableness of a search or seizure." *United States* v. *Martinez-Fuerte*, 428 U. S. 543, 565 (1976); see also *Beck* v. *Ohio*, 379 U. S. 89, 96 (1964). Furthermore, even if a magistrate would have authorized the search that the police conducted, the interposition of a magistrate's neutral judgment reassures the public that the orderly process of law has been respected:

> "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson* v. *United States*, *supra*, at 13–14.

See also *Marshall* v. *Barlow's, Inc.*, 436 U. S. 307, 323 (1978); *United States* v. *United States District Court, supra*, at 321. The safeguards embodied in the warrant requirement apply as forcefully to automobile searches as to any others.

Our cases do recognize a narrow exception to the warrant requirement for certain automobile searches. Throughout our decisions, two major considerations have been advanced to justify the automobile exception to the warrant require-

ment. We have upheld only those searches that are actually justified by those considerations.

First, these searches have been justified on the basis of the exigency of the mobility of the automobile. See, *e. g.*, *Chambers* v. *Maroney*, 399 U. S. 42 (1970); *Carroll* v. *United States*, 267 U. S. 132 (1925). This "mobility" rationale is something of a misnomer, cf. *Cady* v. *Dombrowski*, 413 U. S. 433, 442–443 (1973), since the police ordinarily can remove the car's occupants and secure the vehicle on the spot. However, the inherent mobility of the vehicle often creates situations in which the police's only alternative to an immediate search may be to release the automobile from their possession.[2] This alternative creates an unacceptably high risk of losing the contents of the vehicle, and is a principal basis for the Court's automobile exception to the warrant requirement. See *Chambers*, *supra*, at 51, n. 9.

In many cases, however, the police will, prior to searching the car, have cause to arrest the occupants and bring them to the station for booking. In this situation, the police can ordinarily seize the automobile and bring it to the station. Because the vehicle is now in the exclusive control of the authorities, any subsequent search cannot be justified by the mobility of the car. Rather, an immediate warrantless search of the vehicle is permitted because of the second major justification for the automobile exception: the diminished expectation of privacy in an automobile.

Because an automobile presents much of its contents in open view to police officers who legitimately stop it on a public way, is used for travel, and is subject to significant gov-

---

[2] The fact that the police are able initially to remove the occupants from the car does not remove the justification for an immediate search. If police could not conduct an immediate search of a stopped automobile, they would often be left with the difficult task of deciding what to do with the occupants while a warrant is obtained. In the case of a parked automobile, by contrast, if the automobile is unoccupied, this problem is not presented. See, *e. g.*, *Coolidge* v. *New Hampshire*, *supra*.

ernment regulation, this Court has determined that the intrusion of a warrantless search of an automobile is constitutionally less significant than a warrantless search of more private areas. See *Arkansas* v. *Sanders*, 442 U. S. 753, 761 (1979) (collecting cases). This justification has been invoked for warrantless automobile searches in circumstances where the exigency of mobility was clearly not present. See, *e. g.*, *South Dakota* v. *Opperman*, 428 U. S. 364, 367–368 (1976); *Cady* v. *Dombrowski, supra,* at 441–442. By focusing on the defendant's reasonable expectation of privacy, this Court has refused to require a warrant in situations where the process of obtaining such a warrant would be more intrusive than the actual search itself. Cf. *Katz* v. *United States, supra.* A defendant may consider the seizure of the car a greater intrusion than an immediate search. See *Chambers, supra,* at 51–52. Therefore, even where police *can* bring both the defendant and the automobile to the station safely and can house the car while they seek a warrant, the police are permitted to decide whether instead to conduct an immediate search of the car. In effect, the warrantless search is permissible because a warrant requirement would not provide significant protection of the defendant's Fourth Amendment interests.

### B

The majority's rule is flatly inconsistent with these established Fourth Amendment principles concerning the scope of the automobile exception and the importance of the warrant requirement. Historically, the automobile exception has been limited to those situations where its application is compelled by the justifications described above. Today, the majority makes no attempt to base its decision on these justifications. This failure is not surprising, since the traditional rationales for the automobile exception plainly do not support extending it to the search of a container found inside a vehicle.

The practical mobility problem—deciding what to do with both the car and the occupants if an immediate search is not conducted—is simply not present in the case of movable containers, which can easily be seized and brought to the magistrate. See *Sanders*, 442 U. S., at 762–766, and nn. 10, 14. The lesser-expectation-of-privacy rationale also has little force. A container, as opposed to the car itself, does not reflect diminished privacy interests. See *id.*, at 762, 764–765. Moreover, the practical corollary that this Court has recognized—that depriving occupants of the use of a car may be a greater intrusion than an immediate search—is of doubtful relevance here, since the owner of a container will rarely suffer significant inconvenience by being deprived of its use while a warrant is being obtained.

Ultimately, the majority, unable to rely on the justifications underlying the automobile exception, simply creates a new "probable cause" exception to the warrant requirement for automobiles. We have soundly rejected attempts to create such an exception in the past, see *Coolidge* v. *New Hampshire*, 403 U. S. 443 (1971), and we should do so again today.

In purported reliance on *Carroll* v. *United States, supra,* the Court defines the permissible scope of a search by reference to the scope of a probable-cause search that a magistrate could authorize. Under *Carroll*, however, the mobility of an automobile is what is critical to the legality of a warrantless search. Of course, *Carroll* properly confined the search to the probable-cause limits that would also limit a magistrate, but it did not suggest that the search could be as *broad* as a magistrate could authorize upon a warrant. A magistrate could authorize a search encompassing containers, even though the mobility rationale does not justify such a broad search. Indeed, the Court's reasoning might have justified the search of the entire car in *Coolidge* despite the fact that the car was not "mobile" at all. Thus, in blithely suggesting that *Carroll* "neither broadened nor limited the scope of a lawful search based on probable cause,"

*ante*, at 820, the majority assumes what has never been the law: that the scope of the automobile-mobility exception to the warrant requirement is as broad as the scope of a "lawful" probable-cause search of an automobile, *i. e.*, one authorized by a magistrate.

The majority's sleight-of-hand ignores the obvious differences between the function served by a magistrate in making a determination of probable cause and the function of the automobile exception. It is irrelevant to a magistrate's function whether the items subject to search are mobile, may be in danger of destruction, or are impractical to store, or whether an immediate search would be less intrusive than a seizure without a warrant. A magistrate's only concern is whether there is probable cause to search them. Where suspicion has focused not on a particular item but only on a vehicle, home, or office, the magistrate might reasonably authorize a search of closed containers at the location as well. But an officer on the beat who searches an automobile without a warrant is not entitled to conduct a broader search than the exigency obviating the warrant justifies. After all, what justifies the warrantless search is not probable cause alone, but *probable cause coupled with the mobility of the automobile*. Because the scope of a *warrantless* search should depend on the scope of the justification for dispensing with a warrant, the entire premise of the majority's opinion fails to support its conclusion.

The majority's rule masks the startling assumption that a policeman's determination of probable cause is the functional equivalent of the determination of a neutral and detached magistrate. This assumption ignores a major premise of the warrant requirement—the importance of having a neutral and detached magistrate determine whether probable cause exists. See *supra*, at 828–829. The majority's explanation that the scope of the warrantless automobile search will be "limited" to what a magistrate could authorize is thus inconsistent with our cases, which firmly establish that an on-

the-spot determination of probable cause is *never* the same as a decision by a neutral and detached magistrate.

## C

Our recent decisions in *United States* v. *Chadwick*, 433 U. S. 1 (1977), *Arkansas* v. *Sanders, supra,* and *Robbins* v. *California*, 453 U. S. 420 (1981), clearly affirm that movable containers are different from automobiles for Fourth Amendment purposes. In *Chadwick*, the Court drew a constitutional distinction between luggage and automobiles in terms of substantial differences in expectations of privacy. 433 U. S., at 12. Moreover, the Court held that the mobility of such containers does not justify dispensing with a warrant, since federal agents had seized the luggage and safely transferred it to their custody under their exclusive control. *Sanders* explicitly held that "the warrant requirement of the Fourth Amendment applies to personal luggage taken from an automobile to the same degree it applies to such luggage in other locations." 442 U. S., at 766. And *Robbins* reaffirmed the *Sanders* rationale as applied to wrapped packages found in the unlocked luggage compartment of a vehicle. 453 U. S., at 425.[3]

In light of these considerations, I conclude that any movable container found within an automobile deserves precisely the same degree of Fourth Amendment warrant protection that it would deserve if found at a location outside the automobile. See *Sanders*, 442 U. S., at 763–765, and n. 13; *Chadwick, supra,* at 17, n. 1 (BRENNAN, J., concurring). *Chadwick*, as the majority notes, "reaffirmed the general principle that closed packages and containers may not be

---

[3] The plurality stated: "[*Chadwick* and *Sanders*] made clear, if it was not clear before, that a closed piece of luggage found in a lawfully searched car is constitutionally protected to the same extent as are closed pieces of luggage found anywhere else." *Robbins* v. *California*, 453 U. S., at 425.

searched without a warrant." *Ante,* at 812. Although there is no need to describe the exact contours of that protection in this dissenting opinion, it is clear enough that closed, opaque containers—regardless of whether they are "worthy" or are always used to store personal items—are ordinarily fully protected. Cf. *Sanders, supra,* at 764, n. 13.[4]

Here, because respondent Ross had placed the evidence in question in a closed paper bag, the container could be seized, but not searched, without a warrant. No practical exigencies required the warrantless searches on the street or at the station: Ross had been arrested and was in custody when both searches occurred, and the police succeeded in transporting the bag to the station without inadvertently spilling its contents.[5]

## II

In announcing its new rule, the Court purports to rely on earlier automobile search cases, especially *Carroll* v. *United States.* The Court's approach, however, far from being "faithful to the interpretation of the Fourth Amendment that the Court has followed with substantial consistency throughout our history," *ante,* at 824, is plainly contrary to the letter and the spirit of our prior automobile search cases. Moreover, the new rule produces anomalous and unacceptable consequences.

---

[4] This rule may present some line-drawing problems, but no greater than those presented when a movable container is in the arms of a citizen walking down the street. There is no justification for relying on marginal difficulties of definition to reject a warrant requirement in one situation but not the other.

[5] The Government argues that less secure containers such as paper bags can easily spill their contents; thus, no privacy interest of the defendant is protected if police are required to seize the container and bring it to the station. Whatever the force of this argument in other contexts, here police succeeded in reclosing the bag after the initial search and transporting it to the station without incident.

## A

The majority's argument that its decision is supported by our decisions in *Carroll* and *Chambers* is misplaced. The Court in *Carroll* upheld a warrantless search of an automobile for contraband on the basis of the impracticability of securing a warrant in cases involving the transportation of contraband goods. The Court did not, however, suggest that obtaining a warrant for the search of an automobile is always impracticable.[6] "In cases where the securing of a warrant is reasonably practicable, *it must be used* . . . . In cases where seizure is impossible except without warrant, the seizing officer acts unlawfully and at his peril unless he can show the court probable cause." 267 U. S., at 156 (emphasis added).[7] As this Court reaffirmed in *Chambers*, 399 U. S.,

---

[6] The Court in *Carroll* v. *United States*, 267 U. S. 132 (1925), seems to have assumed that the police could not arrest the occupants of the automobile, since the offense was a misdemeanor and was not deemed to have been committed in the officers' presence. See 2 W. LaFave, Search and Seizure 511 (1978). Accordingly, police were faced with an exigency often not encountered today in searches of stopped automobiles: in order to *seize* the car pending the securing of a warrant, they would have to leave the occupants stranded.

[7] In *Carroll*, of course, no movable *container* was searched. Although in other early cases containers may in fact have been searched, see *ante*, at 818–819, the parties did not litigate in this Court the question whether containers deserve separate protection.

The Court's suggestion that the absence of such an argument "illuminates the profession's understanding of the scope of the search permitted under *Carroll*," *ante*, at 819, is an unusual approach to constitutional interpretation. I would hesitate to rely upon the "profession's understanding" of the Fourteenth Amendment or of *Plessy* v. *Ferguson*, 163 U. S. 537 (1896), in the early part of this century as justification for not granting Negroes constitutional protection. See *Brown* v. *Board of Education*, 347 U. S. 483 (1954). Moreover, for a number of reasons, including the broad scope of the permitted search incident to arrest prior to *Chimel* v. *California*, 395 U. S. 752 (1969), and the uncertain meaning of a "search" prior to *Katz* v. *United States*, 389 U. S. 347 (1967), the profession formerly advanced different arguments against automobile searches than it advances today.

at 50, "[n]either *Carroll, supra,* nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords."

Notwithstanding the reasoning of these cases, the majority argues that *Carroll* and *Chambers* support its decisions because integral compartments of a car are functionally equivalent to containers found within a car, and because the practical advantages to the police of the *Carroll* doctrine "would be largely nullified if the permissible scope of a warrantless search of an automobile did not include containers and packages found inside the vehicle." *Ante,* at 820. Neither of these arguments is persuasive. First, the Court's argument that allowing warrantless searches of certain integral compartments of the car in *Carroll* and *Chambers,* while protecting movable containers within the car, would be "illogical" and "absurd," *ante,* at 818, ignores the reason why this Court has allowed warrantless searches of automobile compartments. Surely an integral compartment within a car is just as mobile, and presents the same practical problems of safekeeping, as the car itself. This cannot be said of movable containers located within the car. The fact that there may be a high expectation of privacy in both containers and compartments is irrelevant, since the privacy rationale is not, and cannot be, the justification for the warrantless search of compartments.

The Court's second argument, which focuses on the practical advantages to police of the *Carroll* doctrine, fares no better. The practical considerations which concerned the *Carroll* Court involved the difficulty of immobilizing a vehicle while a warrant must be obtained. The Court had no occasion to address whether *containers* present the same practical difficulties as the car itself or integral compartments of the car. They do not. See *supra,* at 832. *Carroll* hardly suggested, as the Court implies, *ante,* at 820, that a warrant-

less search is justified simply because it assists police in obtaining more evidence.

Although it can find no support for its rule in this Court's precedents or in the traditional justifications for the automobile exception, the majority offers another justification. In a footnote, the majority suggests that "practical considerations" militate against securing containers found during an automobile search and taking them to the magistrate. *Ante*, at 821, n. 28. The Court confidently remarks: "[P]rohibiting police from opening immediately a container in which the object of the search is most likely to be found and instead forcing them first to comb the entire vehicle would actually exacerbate the intrusion on privacy interests. Moreover, until the container itself was opened the police could never be certain that the contraband was not secreted in a yet undiscovered portion of the vehicle." *Ibid.* The vehicle would have to be seized while a warrant was obtained, a requirement inconsistent with *Carroll* and *Chambers*. *Ante*, at 821, n. 28.

This explanation is unpersuasive. As this Court explained in *Sanders* and as the majority today implicitly concedes, the burden to police departments of seizing a package or personal luggage simply does not compare to the burden of seizing and safeguarding automobiles. *Sanders*, 442 U. S., at 765, n. 14; *ante*, at 811, and n. 16. Other aspects of the Court's explanation are also implausible. The search will not always require a "combing" of the entire vehicle, since police may be looking for a particular item and may discover it promptly. If, instead, they are looking more generally for evidence of a crime, the immediate opening of the container will not protect the defendant's privacy; whether or not it contains contraband, the police will continue to search for new evidence. Finally, the defendant, not the police, should be afforded the choice whether he prefers the immediate opening of his suitcase or other container to the delay incident to seeking a warrant. Cf. *Sanders, supra,* at 764, n. 12. The more rea-

sonable presumption, if a presumption is to replace the defendant's consent, is surely that the immediate search of a closed container will be a greater invasion of the defendant's privacy interests than a mere temporary seizure of the container.[8]

B

Finally, the majority's new rule is theoretically unsound and will create anomalous and unwarranted results. These consequences are readily apparent from the Court's attempt to reconcile its new rule with the holdings of *Chadwick* and *Sanders*.[9] The Court suggests that probable cause to search only a container does not justify a warrantless search of an automobile in which it is placed, absent reason to believe that the contents could be secreted elsewhere in the vehicle. This, the majority asserts, is an indication that the new rule is carefully limited to its justification, and is not inconsistent with *Chadwick* and *Sanders*. But why is such a container more private, less difficult for police to seize and store, or in any other relevant respect more properly subject to the war-

---

[8] Seizures of automobiles can be distinguished because of the greater interest of defendants in continuing possession of their means of transportation; in the case of automobiles, a seizure is more likely to be a greater intrusion than an immediate search. See *Chambers* v. *Maroney*, 399 U. S. 42, 51–52 (1970).

[9] Both cases would appear to fall within the majority's new rule. In *United States* v. *Chadwick*, 433 U. S. 1 (1977), federal agents had probable cause to search a footlocker. Although the footlocker had been placed in the trunk of a car and the occupants were about to depart, the Court refused to rely on the automobile exception to uphold the search. (It is true that the United States did not argue in this Court that the search was justified pursuant to that exception, but the theory was hardly so novel that this Court could not have responsibly relied upon it.) In *Arkansas* v. *Sanders*, 442 U. S. 753 (1979), too, the suitcase was mobile and police had probable cause to search it; it was carried in an automobile for several blocks before the automobile was stopped and the suitcase was seized and searched. Again, however, this Court invalidated the search.

rant requirement, than a container that police discover in a probable-cause search of an entire automobile?[10] This rule plainly has peculiar and unworkable consequences: the Government "must show that the investigating officer knew enough but not too much, that he had sufficient knowledge to establish probable cause but insufficient knowledge to know exactly where the contraband was located." 210 U. S. App. D. C. 342, 384, 655 F. 2d 1159, 1201 (1981) (en banc) (Wilkey, J., dissenting).

Alternatively, the majority may be suggesting that *Chadwick* and *Sanders* may be explained because the connection of the container to the vehicle was incidental in these two cases. That is, because police had pre-existing probable cause to seize and search the containers, they were not entitled to wait until the item was placed in a vehicle to take advantage of the automobile exception. Cf. *Coolidge* v. *New Hampshire*, 403 U. S. 443 (1971); 2 W. LaFave, Search and Seizure 519–525 (1978). I wholeheartedly agree that police cannot employ a pretext to escape Fourth Amendment prohibitions and cannot rely on an exigency that they could easily have avoided. This interpretation, however, might well be an exception that swallows up the majority's rule. In neither *Chadwick* nor *Sanders* did the Court suggest that the delay of the police was a pretext for taking advantage of the automobile exception. For all that appears, the Government may have had legitimate reasons for not searching as soon as they had probable cause. In any event, asking police to rely

---

[10] In a footnote, the Court appears to suggest a more pragmatic rationale for distinguishing *Chadwick* and *Sanders*—that no practical problems comparable to those engendered by a general search of a vehicle would arise if the official suspicion is confined to a particular piece of luggage. *Ante*, at 816, n. 21. This suggestion is illogical. A general search might disclose only a single item worth searching; conversely, pre-existing suspicion might attach to a number of items later placed in a car. Surely the protection of the warrant requirement cannot depend on a numerical count of the items subject to search.

on such an uncertain line in distinguishing between legitimate and illegitimate searches for containers in automobiles hardly indicates that the majority's approach has brought clarification to this area of the law. *Ante*, at 804; see *Robbins*, 453 U. S., at 435 (POWELL, J., concurring in judgment).[11]

## III

The Court today ignores the clear distinction that *Chadwick* established between movable containers and automobiles. It also rejects all of the relevant reasoning of *Sanders*[12] and offers a substitute rationale that appears inconsistent with the result. See *supra*, at 832. *Sanders* is therefore effectively overruled. And the Court unambiguously overrules "the disposition" of *Robbins*, *ante*, at 824, though it gingerly avoids stating that it is overruling the case itself.

The only convincing explanation I discern for the majority's broad rule is expediency: it assists police in conducting

---

[11] Unless one of these alternative explanations is adopted, the Court's attempt to distinguish the holdings in *Chadwick* and *Sanders* is not only unpersuasive but appears to contradict the Court's own theory. The Court suggests that in each case, the connection of the container to the vehicle was simply coincidental, and notes that the police did not have probable cause to search the entire vehicle. But the police assuredly did have probable cause to search the vehicle *for the container*. The Court states that the scope of the permitted warrantless search is determined only by what a magistrate could authorize. *Ante*, at 823. Once police found that container, according to the Court's own rule, they should have been entitled to search at least the container without a warrant. There was probable cause to search and the car was mobile in each case.

[12] The Court suggests that it rejects "some of the reasoning in *Sanders*." *Ante*, at 824. But the Court in *Sanders* unambiguously stated: "[W]e hold that the warrant requirement of the Fourth Amendment applies to personal luggage taken from an automobile to the same degree it applies to such luggage in other locations." 442 U. S., at 766. The Court today instead adopts the reasoning of the opinion of THE CHIEF JUSTICE, joined by JUSTICE STEVENS, who refused to join the majority opinion because of the breadth of its rationale. *Ibid.*

automobile searches, ensuring that the private contain-
ers into which criminal suspects often place goods will no
longer be a Fourth Amendment shield. See *ante*, at 820.
"When a legitimate search is under way," the Court instructs
us, "nice distinctions between . . . glove compartments, up-
holstered seats, trunks, and wrapped packages . . . must
give way to the interest in the prompt and efficient comple-
tion of the task at hand." *Ante*, at 821. No "nice distinc-
tions" are necessary, however, to comprehend the well-
recognized differences between movable containers (which,
even after today's decision, would be subject to the warrant
requirement if located outside an automobile), and the auto-
mobile itself, together with its integral parts. Nor can I
pass by the majority's glib assertion that the "prompt and ef-
ficient completion of the task at hand" is paramount to the
Fourth Amendment interests of our citizens. I had thought
it well established that "the mere fact that law enforcement
may be made more efficient can never by itself justify disre-
gard of the Fourth Amendment." *Mincey* v. *Arizona*, 437
U. S., at 393.[13]

This case will have profound implications for the privacy of
citizens traveling in automobiles, as the Court well under-
stands. "For countless vehicles are stopped on highways
and public streets every day and our cases demonstrate that
it is not uncommon for police officers to have probable cause
to believe that contraband may be found in a stopped vehi-
cle." *Ante*, at 803–804. A closed paper bag, a toolbox, a
knapsack, a suitcase, and an attaché case can alike be
searched without the protection of the judgment of a neutral
magistrate, based only on the rarely disturbed decision of a
police officer that he has probable cause to search for contra-
band in the vehicle.[14] The Court derives satisfaction from

---

[13] Of course, efficiency and promptness can never be substituted for due
process and adherence to the Constitution. Is not a dictatorship the most
"efficient" form of government?

[14] The Court purports to restrict its rule to areas that the police have
probable cause to search, as "defined by the object of the search and the

the fact that its rule does not exalt the rights of the wealthy over the rights of the poor. *Ante*, at 822. A rule so broad that all citizens lose vital Fourth Amendment protection is no cause for celebration.

I dissent.

---

places in which there is probable cause to believe that it may be found." *Ante*, at 824. I agree, of course, that the probable-cause component of the automobile exception must be strictly construed. I fear, however, that the restriction that the Court emphasizes may have little practical value. See 210 U. S. App. D. C. 342, 351, n. 21, 655 F. 2d 1159, 1168, n. 21 (1981) (en banc). If police open a container within a car and find contraband, they may acquire probable cause to believe that other portions of the car, and other containers within it, will contain contraband. In practice, the Court's rule may amount to a wholesale authorization for police to search any car from top to bottom when they have suspicion, whether localized or general, that it contains contraband.