# STATE OF FLORIDA v CLARK

## Case No. MM85-1995A1-XX

County Court, Polk County

December 9, 1985

### APPEARANCES OF COUNSEL

**Office of the State Attorney** for plaintiff.

**Office of the Public Defender** for defendant.

### OPINION OF THE COURT

DICK PRINCE, County Judge.

*ORDER DENYING MOTION TO SUPPRESS EVIDENCE*

This cause came before the Court upon the Defendant's Motion to Suppress Evidence. The aforesaid Motion was two-pronged, in that in the above-captioned Misdemeanor case the evidence sought to be suppressed included cannabis, a plastic baggie, a set of small scales, and rolling papers; while in the above-captioned traffic cases the defense sought to suppress "any and all testimony, information, statements and admissions concerning the suspended or revoked status of the Defendant's driver's license." The Court, having heard the testimony of both the Defendant himself as well as Deputy Sheriff Annen, the police officer who effectuated the traffic stop, and further having

heard the arguments of counsel and having reviewed the voluminous case law provided by able counsel for both sides in this matter, hereby DENIES the Defendant's Motion to Suppress in its entirety. The reasons for this denial are as follows:

At the Hearing on the Motion to Suppress, Deputy Sheriff Annen, who was then currently assigned to work a narcotics detail with the Polk County Sheriff's Department, testified that in the course of his regular duties he received a telephone call from an anonymous confidential informant who informed the deputy that a certain individual was "selling marijuana now" at a certain business location in Polk County. Further, the informant told the deputy that at the 12:15 p.m. lunch break this individual would be traveling to Auburndale on a certain roadway after leaving the business location. The information described the individual selling the cannabis in some detail, specifying that he was a white male, between the ages of 35 and 40, sporting a full beard, wearing a baseball cap on his head, and that below the baseball cap long dark curly hair was visible. In addition thereto, the informant described the vehicle of the person selling the cannabis in even greater detail, specifying that this vehicle was a 1966 or 1967 Ford station wagon, yellow in color but with apparent replacement green fender and an overall "beat up" body condition. The deputy sheriff further testified that the informant simply stated the basis of his knowledge regarding the narcotics transaction by saying "I watched him."

Acting upon this information, Deputy Sheriff Annen positioned himself in an unmarked vehicle upon the side of the roadway leading from the specified business location to the city of Auburndale. At 12:28 p.m. the deputy spotted a vehicle headed on this roadway towards Auburndale which precisely matched the description of the rather unique vehicle which the informant had described. The deputy pulled in behind the vehicle and was able to ascertain that the driver of the vehicle also matched in every particular (including the baseball cap) the individual which the anonymous informant had described over the phone. Deputy Sheriff Annen, attempting to remain undercover, radioed ahead for marked units of the Polk County Sheriff's Department to intercept the Defendant's vehicle. However, immediately before reaching the intersection where the marked units were positioned and waiting, the Defendant's vehicle executed an abrupt turn, necessitating Deputy Sheriff Annen to follow in pursuit, eventually effectuating the stop by use of a flashing blue light retrieved from under the seat of the undercover vehicle. Upon seeing the flashing blue light, the Defendant pulled his vehicle over without further incident.

Deputy Sheriff Annen exited his vehicle and first asked the Defendant to produce his driver's license and registration. The Defendant offered to get his registration from the glove box of the vehicle, but the deputy intervened and said no that he, the deputy, would get it. Whereupon, the deputy opened the closed glove box, got the vehicle registration, and in so doing saw in the glove box the marijuana and other contraband involved in the instant Misdemeanor case. Further investigation as well as the Defendant's own statements, revealed that the Defendant's driver's license had been suspended by the Florida State Division of Highway Safety and Motor Vehicles.

At the Hearing held on the Motion to Suppress a great deal of testimony concerned the deputy's stated fear that the Defendant, merely by nature of his allegedly being involved in the narcotics trade, might as a consequence thereof have been armed with a firearm, which firearm could have been concealed in the glove box of the vehicle. However, nothing in the information provided by the confidential informant nor in the personal observation of the deputy sheriff warranted justifiable alarm or a reasonable suspicion that the Defendant was so armed. Consequently, defense counsel has cited a great number of cases invalidating contraband seizures found during improper "pat downs" and searches for weapons. Nonetheless, it is the Court's present conclusion that despite the officer's testimony regarding his "fear", the discovery of the contraband and statements of the Defendant regarding his driver's license at the time of the stop cannot properly be considered a "stop and frisk" issue, but rather present very squarely the issue of whether the officer had sufficient probable cause to search the vehicle and make the traffic stop based upon the information provided by the confidential informant and later corroborated by the officer's own observations. If the officer had sufficient probable cause to search the vehicle upon making the traffic stop, and the Court is presently finding that he did, then his expressly stated albeit ungrounded fear that a firearm might also be found is immaterial. In other words, although the officer may have stated additional motivation for personally conducting the search, such statement does not affect the character of an otherwise valid search.

"[S]ince its earliest days Congress had recognized the impracticability of securing a warrant in cases involving the transportation of contraband goods. It is this impracticability, viewed in historical prospective, that provided that basis for the *Carroll* decision. Given the nature of an automobile in transit, the (Supreme) Court recognized that an immediate intrusion is necessary if police officers are to secure the illicit substance. In this class of cases, the Court held that a

warrantless search of an automobile is not unreasonable." *United States v. Ross*, 102 S.Ct. 2157 (1982). Further, "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id*, at 2172. Since, in the case at Bar it is unquestioned that the narcotics described by the confidential informant could have been concealed in the glove box of the Defendant's automobile, the question then turns upon the officer's probable cause to stop the vehicle. Further, since at the time of the traffic stop the officer was unaware of any traffic violations which the Defendant had been or was committing, this traffic stop must be based upon probable cause derived from the anonymous confidential informant's phone call.

"In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual considerations of every day life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 388 U.S. at 175 (1949). "Probable cause does not demand the certainty we associate with formal trials." *Illinois v. Gates*, 103 S.Ct. at 2336 (1983). In the case at Bar, the defense has argued that the Court should view the information provided by the anonymous confidential informant under the rigid auspices of the "two-pronged" Aguilar/Spinelli test. However, as the State has correctly noted in its argument, the United States Supreme Court has specifically "rejected as hypertechnical" the "two-pronged test". *Illinois v. Gates*, supra, and *Massachusetts v. Upton*, 104 S.Ct. 2085 at 2087 (1984). As the Court noted in *Gates*, "Even if we entertain some doubt as to an informant's motive, his explicit and detailed description of alleged wrong doing, along with the statement that the event was observed be the case." *Gates* at 2330. Further, in *Draper v. United States*, 358 U.S. 307 (1959), a case which the Supreme Court itself characterized as "The classic case on the value corroborative efforts of police officials", the Court specified that when a confidential informant has given detailed information to a police officer, that at such point in his investigation that the officer "had personally verified every facet of the information given him", "Surely with every other bit of . . . information being thus personally verified, (the officer) had "reasonable grounds" to believe that the remaining unverified bit of . . . information (in the case at Bar that the Defendant would have the marijuana with him) was likewise true." *Id* at 313. Even the *Spinelli* decision, whose rigid requirements the Supreme Court has now departed from, recognizes the common sense behind the principle that "Because an informant is right about some things, he is probably right about other facts." *Spinelli v. United States*, 393 U.S. 410 at 427. "The

task", as states in *Gates* at 2332, "is simply to make a practical, common-sense decision whether given all the circumstances . . ., including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

The Court presently finds that the information provided by the anonymous confidential informant in the case at Bar was sufficiently current, detailed, and based upon a first-hand observation ("I watched him"), such that upon further corroboration of the details by the arresting officer the traffic stop and subsequent search of the vehicle were valid. The case at bar appears to be on all fours with the decision of the Second District Court of Appeal of Florida in *Smith v. State*, 411 So.2d 952, where at 953 that Court said "In the present case, the informant gave (the officer) precise information concerning the description of the vehicle and its occupants, the place where they would be, and the time when they would be there. The police were able to verify these details in every particular. Thus, it can be reasonably inferred that the informant gathered his information in a reliable way. According, the Court could properly conclude that the police had probable cause to stop and search appellant's automobile."

This Court having decided that the officer in the case at Bar could validly stop the Defendant's automobile and search the glove box of that automobile, since the Defendant's only assertion that his statements regarding the suspension of his driver's license were suppressible is predicated upon an illegal stop of the automobile and subsequent illegal search thereof, the Defendant's Motion to Suppress is hereby DENIED in its entirety.