**UNITED STATES of America, Plaintiff,**

v.

**Kenneth Michael DALLAS, Robert Lester McPherson, a/k/a "Bobby Mack", Billy Ray Robbins, Defendants.**

**Cause No. IP 87–57–CR–03.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Oct. 14, 1987.

Bradley L. Williams, U.S. Atty., C. Joseph Russell, Asst. U.S. Atty., Indianapolis, Ind., for plaintiff.

Philip R. Melangton, Jr., Lee Tarvin, Indianapolis, Ind., for defendants.

### ENTRY

BARKER, District Judge.

This matter is before the court on the June 18, 1987, motion to suppress filed by the defendant Billy Ray Robbins. The government filed a response on July 10, 1987. On September 15, 1987, one of Mr. Robbins codefendants, Robert L. McPherson, moved to adopt Mr. Robbins' motion in full and requested the court to rule on the motion as it applies to Mr. McPherson. A hearing was held on the motions in open court on September 21, 1987. The government filed its post hearing memorandum on September 30, 1987, and Mr. Robbins filed his on October 5, 1987.

The court, having heard and considered the evidence and the legal arguments of the parties, and being duly advised, now DENIES the motions to suppress. The reasons for the court's ruling are set forth in the following memorandum.

### *Memorandum*

#### I. *Background*

The evidence presented to this court reveals that the parties have numerous disagreements about many of the pertinent facts in this case. They do agree that on June 7, 1987, Mr. Robbins and his passenger, Sherri Grant, were driving Mr. Robbins' 1977 Cadillac Sedan DeVille in an easterly direction through the state of New Mexico on Highway 40. They further agree that, shortly after noon, their automobile was pulled over by New Mexico State Police officer John Ball. Beyond this, the parties concur on little.

According to Mr. Robbins, Officer Ball told him, after the arrests, that Ball's motivation for stopping Mr. Robbins' automobile was that it fit some pre-ordained "profile" that New Mexico police officers use to detect drug smugglers. Mr. Robbins' testified that, after Officer Ball had pulled Mr. Robbins over, he approached Mr. Robbins' automobile by getting out of his car, unstrapping his holster, and putting his right hand on the butt of his .357 Magnum. By the time Officer Ball had arrived at the driver's side door, Mr. Robbins had partially rolled down his window. Officer Ball then demanded Mr. Robbins' drivers license and the registration for his car. Both were promptly produced. According to Mr. Robbins, Officer Ball looked briefly at the license and the registration and then abruptly ordered Mr. Robbins to "get out of the goddamned car." Officer Ball further ordered Mr. Robbins to proceed to the rear of the car and to bring his keys with him. As he got out of his automobile, Mr. Robbins testified, he noticed it was a cold, rainy and windy day. Once Mr. Robbins arrived behind the trunk of his car, Officer Ball allegedly grabbed the keys out of Mr. Robbins' hands and opened the trunk himself without requesting Mr. Robbins' permission. Inside the trunk were two boxes, one rather large and the other somewhat smaller. According to Mr. Robbins, both boxes were sealed shut with tape, their contents hidden from view. Again, without seeking or receiving permission, Officer Ball then tore open at least one of the two boxes and found more than 111 pounds of raw marijuana. Both Mr. Robbins and Ms. Grant were then arrested and charged with conspiracy to distribute marijuana.

Officer Ball's testimony presents a somewhat different report of events. According to Officer Ball, his sole motivation for stopping Mr. Robbins was his belief that Mr. Robbins had just committed a traffic violation, and he denied telling Mr. Robbins the arrest was based on any "profile"-type techniques. Officer Ball testified that his radar equipment indicated that Mr. Robbins was driving at 67 miles per hour in an area with a posted maximum speed limit of 65 miles per hour. Officer Ball further testified that at no time in his dealings with Mr. Robbins did he unsnap his holster or put his hand on his gun. He also testified that the day was hot and without rain or wind. After approaching the car and seeing the driver's side window rolled down,

Officer Ball did request to see Mr. Robbins' driver's license and the registration for his car. Mr. Robbins had to open the glove compartment to get the registration and Officer Ball testified it is normally his practice to bend over slightly and lean toward the driver's window in order to observe the opening of a glove compartment by a detainee; assertedly, this is done in order to confirm that the driver is not retrieving a weapon. Officer Ball testified that by thus bringing his face closer to the opened window, he for the first time detected the strong and distinctive odor of raw marijuana, an odor he had come to recognize based on his expertise in law enforcement. Seeing nothing in the back seat other than a small suitcase, Officer Ball testified that he then requested of Mr. Robbins that he voluntarily open the trunk of his car. Mr. Robbins did so. Once the lid was open, Officer Ball saw two boxes in the trunk. According to Officer Ball, the smaller box had several small, uncovered holes in the sides through which he could plainly view packages of raw marijuana. Based on this observation, Officer Ball placed Mr. Robbins and Ms. Grant under arrest.

Mr. Robbins' passenger, Sherri Grant, also testified at the suppression hearing. Her testimony was noteworthy because she stated that at no time did she see Officer Ball unstrap his holster or otherwise act in a menacing manner. She also testified that, when requested to open the trunk of his car, Mr. Robbins did so voluntarily and without hesitation.

Mr. Robbins now moves to suppress the evidence that Officer Ball obtained when he searched the trunk of the automobile. Mr. Robbins argues that the more than one hundred pounds of discovered marijuana is the product of an illegal search. Mr. Robbins posits several arguments in support of his charge of illegality. First, he alleges there was no probable cause for the initial stop of his automobile. Second, he urges that the search of both his trunk and the boxes contained therein was without a warrant and fails to fit into any of the enunciated exceptions to the warrant requirement. More specifically, he argues that Officer Ball had neither consent to open

the trunk and boxes nor adequate probable cause to justify application of the so-called "automobile exception" to the warrant requirement.

The government counters by arguing that Officer Ball in fact had probable cause to make the initial stop of Mr. Robbins' automobile. As for the searches themselves, the government admits that they were conducted without a warrant, but maintains that they were justified under at least two exceptions to the warrant requirement. First, the government asserts that Mr. Robbins consented to Officer Ball's searches; second, it asserts that, even if Mr. Robbins' consent was inadequate or nonexistent, Officer Ball's detection of the marijuana odor provided the officer with adequate probable cause to conduct an immediate search under the automobile exception to the warrant requirement.

Additionally, the pleadings and testimony of the parties have raised two ancillary issues which the court must consider. First, Mr. Robbins has moved this court to not only suppress the evidence of marijuana discovered by Officer Ball, but to also suppress any statements allegedly made by Ms. Grant subsequent to her arrest. Mr. Robbins asserts that, because any such statements would be the product of Officer Ball's illegal search and arrest, they must therefore be excluded from any criminal trial of Mr. Robbins as the "fruit of the poisonous tree." Second, Mr. Robbins' co-defendant, Robert McPherson, has moved to adopt Mr. Robbins' suppression motion. Mr. McPherson urges that any evidence which this court determines must be excluded from the prosecution of Mr. Robbins must likewise be excluded from any prosecution of Mr. McPherson.

## II. *Discussion*

The court first turns briefly to the motion by Mr. McPherson to adopt the suppression motion of Mr. Robbins. The court finds that Mr. McPherson lacks adequate standing to move for the suppression of the evidence seized by Officer Ball. The threshold requirement for any fourth

amendment claim is a legitimate expectation of privacy in the thing or place searched. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Mr. McPherson has made no such showing with respect to the evidence seized by Officer Ball. Mr. McPherson was neither the owner of the automobile searched nor was he present during the search. Indeed, no evidence at all of Mr. McPherson's interest in the search and seizure of June 7, 1987, was presented at the hearing before this court. Apparently Mr. McPherson asserts that his fourth amendment right arises derivatively through Mr. Robbins and urges that, because Mr. Robbins and Mr. McPherson have been charged with conspiracy, Mr. Robbins was somehow Mr. McPherson's agent for fourth amendment purposes. The Supreme Court, however, has made clear that fourth amendment rights are personal and may not be asserted vicariously. *See Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969). Therefore, Mr. McPherson's claim is without merit and the court proceeds to consider Mr. Robbins' suppression motion independent of Mr. McPherson.

■ The initial question which Mr. Robbins' motion presents to this court is whether Officer Ball had probable cause to even stop Mr. Robbins' automobile. The court finds that he did. Testimony presented at the hearing made it clear that Officer Ball had adequate grounds for his belief that Mr. Robbins' automobile was being driven in excess of the posted speed limit. Therefore, Officer Ball was well within his rights to stop Mr. Robbins' automobile in order to issue a traffic citation to the driver.

The more complicated question, of course, is whether Officer Ball acted properly when he searched the trunk of Mr. Robbins' automobile and the boxes contained therein. The court finds that Officer Ball's search was conducted without the benefit of a warrant. The court also finds, however, that Officer Ball's searches fall within two distinct exceptions to the warrant requirement.

■ First of all, the court finds that Mr. Robbins consented to the searches conducted by Officer Ball. When determining whether consent for a search was given voluntarily and effectively, a court must look to the "totality of the circumstances." *See Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Mr. Robbins testified that he did not give consent to the search and, not surprisingly under the circumstances, Officer Ball testified that Mr. Robbins in fact did. The court, however, finds the testimony of Ms. Grant, Mr. Robbins' passenger, persuasive on this point. Her testimony confirmed Officer Ball's contention that Mr. Robbins had indeed consented voluntarily to the search of his trunk without any menacing coercion by Officer Ball. She testified that Officer Ball asked if Mr. Robbins would exit the car and open the trunk, and Mr. Robbins did.

■ Alternatively, the court finds that, regardless of whether Mr. Robbins consented, Officer Ball had probable cause to conduct the searches and was excused from obtaining a warrant under the so-called "automobile exception" to the warrant requirement. In order to reach this conclusion of probable cause, the court first finds as a fact that raw marijuana has a distinctive odor which can be readily detected with experience and training. This fact was confirmed in testimony by prosecution witnesses Officer Ball, the arresting officer, and Stephen White, Special Agent with the Drug Enforcement Agency, and in testimony by defense witness Paul Harden, a retired state police officer with drug enforcement experience. Further, Officer Ball's testimony that he did in fact smell the raw marijuana in Mr. Robbins' automobile was uncontested. The court finds the defendant's presentation of testimony about weather conditions and hypothetical olfactory ability unconvincing. Clearly, Officer Ball's detection of the odor of an illicit substance can serve as probable cause. *See, e.g., United States v. Merryman*, 630 F.2d 780 (10th Cir.1980). Because Officer Ball had full probable cause and because it would have been impractical to obtain a

search warrant, he was fully justified in conducting a search of Mr. Robbins' trunk under the automobile exception to the warrant requirement. *See Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). .

■ It is undisputed that after the trunk was opened Officer Ball proceeded to tear open the smaller of the two boxes he found therein. Mr. Robbins asserts that "[a]ccording to the case law, even if the trunk could have legally been searched, a separate search warrant was required for the boxes." Defendant's Post Hearing Brief at 27. This is incorrect. The Supreme Court has declared:

> an individual's expectation of privacy in a vehicle *and its contents* may not survive if probable cause is given to believe that the vehicle is transporting contraband.... The scope of a warrantless search based on probable cause is no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause[:] ... it is defined by the object of the search and the places where there is probable cause to believe that it may be found.

*United States v. Ross*, 456 U.S. 798, 823–24, 102 S.Ct. 2157, 2172–73, 72 L.Ed.2d 572 (1982) (emphasis added). That is, if a police officer has probable cause to search an automobile for contraband and discovers closed containers during that search, she may *immediately* open those containers if they could reasonably contain the suspected contraband.[1] Therefore, because Officer Ball had probable cause to search Mr. Robbins' automobile and because the smaller box in the trunk could reasonably have contained the raw marijuana for which he was searching, it was proper for Officer Ball to open that box without a warrant.[2]

■ The final issue which remains for this court to address is the defendant's motion to suppress the testimony of Sherri Grant on the grounds that it was the product of an illegal search. Mr. Robbins argues that the arrest of Ms. Grant was based on illegally seized evidence and that, therefore, any statements made by her subsequent to that arrest must be excluded as "the fruit of the poisonous tree." This motion must obviously be denied in light of the court's previous finding that Officer Ball's search was not illegal. The court addresses the issue further only for the purpose of noting that, even if it had found that Officer Ball's search was illegal, it would still be compelled to deny the defendant's motion to suppress the post-arrest statements of Ms. Grant. The Supreme Court has made it clear that statements made by a person being held pursuant to an illegal arrest are not *per se* excludable as the "fruit of the poisonous tree," provided that that person was read her *Miranda* rights before making that statement. *See Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). The court, in fact, must look to the totality of the circumstances in order to determine whether the taint of the illegal search should extend to any subsequent statements made by the illegally detained party. *See id.* Mr. Robbins, however, presented this court with absolutely no evidence about the circumstances surrounding Ms. Grant's statements to the police or statements themselves. Without such information, it would be impossible for this court to determine that Ms. Grant's statements should be suppressed as the "fruit of the poisonous tree."

---

**1.** The defendant errs by citing for the court cases where the police officers only had probable cause to search the containers themselves and *not* probable cause to search the entire car. In such situations it is in fact true that the officer must obtain a warrant prior to searching the containers. *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *see Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). The rule enunciated by those cases, however, is inapplicable to this case. *See Ross*, 456 U.S. at 814, 102 S.Ct. at 2167 (distinguishing *Chadwick* and *Sanders*).

**2.** Given that the opening of the box was justified by probable cause, it is unnecessary for the court to reach the factual question of whether the holes in the box afforded Officer Ball a "plain view" of the marijuana.

## III. *Conclusion*

Because he lacks sufficient standing to assert a fourth amendment claim, the court now DENIES Mr. McPherson's motion to adopt Mr. Robbins' suppression motion. Furthermore, because Officer Ball had both consent and probable cause to search Mr. Robbins' trunk, the court now DENIES Mr. Robbins' motion to suppress evidence. Because the statements of Ms. Grant are not the result of an illegal search and lack an evidentiary basis by which the court could otherwise conclude they were the fruit of the poison tree, Mr. Robbins' motion to suppress her statements is also hereby DENIED.