GARRETT, Judge,
dissenting.
I dissent. The trial court erred when he granted appellee’s motion to suppress.
Inside a Fort Lauderdale hotel, undercover officers negotiated to purchase cocaine from appellee’s codefendant. Outside, ap-pellee drove a BMW around the area parking it at several different locations. Before the codefendant left the hotel to look at money located in an undercover vehicle, *406 he used a walkie-talkie, but did not contact anyone. When the officers asked who he had called, the codefendant pointed to the BMW. After looking at the money, the codefendant walked to the BMW, then parked in a nearby restaurant and handed the walkie-talkie to appellee. The code-fendant then removed the suitcase containing cocaine from the trunk of a Mercedes parked perpendicular to the BMW. The codefendant walked back to the hotel and was arrested. About five minutes later, appellee was arrested as he walked into the hotel. A police officer (a member of the surveillance team) walked to the BMW and seized two identical walkie-talkies he saw laying on the front passenger seat in plain view. The officer knew that the cocaine came from a Mercedes and had “input” that the codefendant had used a walkie-talkie during the negotiations and had handed it to appellee. The officer also saw and seized a set of keys on the rear floorboard of the BMW. A key taken from appellee was used to open the BMW.
I believe the officers had the right to enter the BMW and seize the walkie-talkies (later found to be set to the same channel) and the set of keys (later found to fit the ignition of the Mercedes).
The walkie-talkies were the “smoking guns” that linked the BMW to the cocaine sale. Appellee had no reasonable expectation of privacy in the BMW. He left it in an open parking lot and placed the walkie-talkies on the seat where they could be seen through the window by anyone standing next to the BMW. Because the walkie-talkies were in plain view, no search took place when the officer observed them as he stood in the parking lot. “It has been long settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced into evidence.” Harris v. U.S., 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067, 1069 (1984). Once the police saw the walkie-talkies they had probable cause to search the BMW. “For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.” Chambers v. Maroney, 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419, 429 (1970). See also, United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (police may conduct war-rentless search of vehicle with probable cause as thorough as search authorized by magistrate); Minnis v. State, 577 So.2d 973 (Fla. 4th DCA 1991) (scope of warrentless search conducted by police upon probable cause equal to search magistrate could have authorized).
I acknowledge that appellee’s arrest took place before the officer found the walkie-talkies and that his arrest produced the key that allowed the officers to open the BMW. However, without appellant’s arrest or his key, the walkie-talkies and keys to the Mercedes inevitably would have been discovered. See Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). Once the police saw the walkie-talkies inside the BMW they had the right to seize the automobile under the Florida Contraband Forfeiture Act. § 932.702(3), Fla.Stat. (1987).[1] Entry into the BMW would have been made without using appellee’s key. The walkie-talkies would have been seized as an instrumentality of the crime. § 932.701(2)(e), Fla.Stat. (1987). The set of keys to the Mercedes would have been impounded as the police inventoried the contents of the BMW. See Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).
Whether the state could convict appellee of conspiracy to traffic or trafficking in *407 cocaine should not have been an issue at the motion to suppress hearing.

. "[T]he lawfulness of a warrantless search is to be determined by an objective view of the facts, not the subjective view of the person conducting the search.” State v. Bianco, 513 So.2d 739, 740 (Fla. 3d DCA 1987). The fact that the officers might have subjectively believed they were searching the BMW based on a particular exception to the requirement of a search warrant did not affect a search justified on another exception. See State v. Scott, 576 So.2d 411 (Fla. 3d DCA 1991).