WATKINS, Judge.
This matter was remanded to us by the Louisiana Supreme Court. 573 So.2d 1129. In the original application filed with this Court, the state sought review of the trial court’s ruling granting the defendant’s motion to suppress physical evidence and a statement made by Don Davis. We granted the relief sought by the state, and the defendant applied to the Louisiana Supreme Court for review of that action. This opinion is issued in accordance with the Supreme Court’s order issued January 31, 1991, which remanded this matter to us for briefing, argument and an opinion.
George Traylor, Kenneth Pickering, and Don Davis were jointly indicted by the Livingston Parish grand jury for the distribution of marijuana under the Louisiana Drug Racketeering Act, LSA-R.S. 15:1352-1354 and LSA-R.S. 40:966. The subject of the motion to suppress was a suitcase containing approximately fifteen pounds of marijuana found in the bed of a pickup truck driven by Don Davis. Officer Leland Dwight testified that Mr. Davis consented to a search of the suitcase after he was stopped by several patrol vehicles.[1] Before consenting to the search, defendant told Officer Dwight that the suitcase did not belong to him and that he was unaware of its contents. After his arrest defendant gave a statement which was written by Officer Dwight and signed by the defendant. In addition to the contents of the suitcase, Mr. Davis also moved to suppress the statements.
The trial court found that Mr. Davis’s consent was not voluntary and that the officers did not have probable cause to make the stop, thereafter granting the motion to suppress. In its brief to this court, the state argued that Mr. Davis’s consent was valid, and, even if it were not valid, the search took place incident to an arrest. Finally, the state argued that the evidence was in plain view and that the search was justified under the automobile emergency exception to the warrant requirement.
Citing United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), this court vacated the trial court’s ruling suppressing the contraband and the statement made by Mr. Davis. On remand, we adhere to that ruling for the reasons advanced hereafter.
This investigation began when the state received information from a confidential in *893 formant, later identified as Leo Perry, that an individual named Kenneth Pickering would deliver a package of marijuana to a motel in Covington, Louisiana. The police undertook surveillance of that motel. They watched Mr. Pickering enter a room and remain inside for approximately five minutes before exiting and driving away.
Leo Perry had obtained a key to the room from Mr. Pickering, and he gave it to the police. After waiting long enough for Mr. Pickering to leave the area, the officers entered the room and saw a suitcase. When they opened the suitcase, they found approximately fifteen pounds of marijuana. Thereafter, they closed it, left the room, and resumed surveillance.
A short time later, the officers watched Mr. Davis enter the room. He stayed inside for approximately fifteen seconds before emerging with the suitcase. He placed the suitcase in the bed of his truck and drove away.
The officers kept Mr. Davis under surveillance as he drove from Covington to Livingston Parish. At one point, they called for assistance from a marked unit, requesting that Mr. Davis be stopped because the undercover teams needed to regroup. Mr. Davis was stopped for a traffic violation, then allowed to continue his travel. The officer who made the traffic stop reported to the undercover units that the suitcase was still in the back of the truck.
When Mr. Davis exited the interstate in Livingston Parish, he began a complicated route through a subdivision; the officers assumed that he had become aware of the undercover surveillance, and they concluded their investigation. Several patrol units participated in the stop. Some of the officers had their weapons drawn. They opened the suitcase and found the marijuana after Mr. Davis consented to a search of the bag.
During the hearing on the motion to suppress, Mr. Davis denied that he was attempting to elude the officers or that he consented to a search of the suitcase. He claimed that he was on his way to a relative’s home in the subdivision, and he further testified that the officers actually searched the truck, as well as the suitcase. Mr. Davis also related that the written statement was not entirely accurate and that he had been coerced into making it.
In explaining his possession of the suitcase, Mr. Davis testified that he picked up the suitcase because he 'received a telephone call from someone he thought was Mr. Traylor, but who could have been one of his relatives disguising his voice. The unidentified voice told him to go from his home in Livingston Parish to a motel in St. Tammany Parish and pick up a package. Mr. Davis testified that he did not know what was in the package. He was told to meet Leo Perry at the motel, and that Mr. Perry had a key to the room. When he got to the motel, Mr. Perry told him that he did not want to go up to the room because he had been in trouble before. Therefore, Mr. Davis decided to go to a bar and get a drink; however, Leo Perry insisted that he go to the room. Davis went to the hotel room and got the suitcase. When he came down from the room, he saw Leo Perry driving away. Mr. Davis maintained that he had no idea what was in the suitcase and that it did not occur to him that it could be contraband even after Mr. Perry told him that he could not go into the room because of his prior trouble.
In its reasons for ruling, the trial court found State v. Bunnell, 517 So.2d 439 (La.App. 1st Cir.1987), applicable, concluding that there was a serious question about whether or not the defendant actually had consented to a search of the suitcase. The court further stated that, if Mr. Davis had consented, it questioned whether that consent was free and voluntary and, finally, the court found that there was no probable cause for the arrest.
Initially, we note that whether Mr. Davis consented to the search of the suitcase, or if that consent were given freely and voluntarily, is not at issue. In United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982), the United States Supreme Court found that police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed some *894 where within it may conduct as extensive a search of the vehicle as a magistrate could authorize with a warrant. An individual’s expectation of privacy does not bar a search if probable cause exists to believe that the vehicle contains contraband. The scope of a warrantless search based on probable cause is equal to the scope of a search authorized by a warrant supported by the probable cause. United States v. Ross, supra.
Herein the officers had seen contraband in the suitcase, and they knew that the suitcase was in Mr. Davis’s truck. Since the officers had seen the marijuana in the suitcase, clearly they had probable cause to believe that Mr. Davis carried contraband in his truck. Accordingly, they could search the suitcase as thoroughly as if they had a warrant; Davis’s consent or lack thereof was not a factor in the determination of the validity of the search.
In his brief to this Court, Mr. Davis submits that there are four recognized exceptions to the warrant requirement which could be applicable to the search of an automobile: 1) the “automobile exception”; 2) a search incident to a lawful arrest; 3) an inventory search; and 4) a consensual search. He further claims that the search of the suitcase cannot be justified under either the “automobile exception,” which would require a finding of probable cause, or as incident to a lawful arrest because both the probable cause to arrest for possession of contraband and the probable cause to believe the suitcase contained contraband are tainted by “the initial illegality of an unconstitutional search of the hotel room.”
We disagree with the characterization of the search of the room as unconstitutional. Although the record contains scanty information concerning the circumstances of his possession, Leo Perry had a key to the room. In fact, Mr. Davis confirmed Mr. Perry’s authority over the room; he claimed he was supposed to meet Mr. Perry at the hotel because Mr. Perry had the key. The record supports a finding that Mr. Perry had the key with the knowledge and consent of Mr. Pickering, in whose name the room had been rented. Thus, it appears to us that Leo Perry had the authority to consent to the officers’ entering the room. However, even if he did not, his possession of the key under these circumstances supports a reasonable belief on the part of the police officers that he had the apparent authority to consent to a search of the premises. See Illinois v. Rodriguez, — U.S. -, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).[2] Therefore, the officers’ entry into the room was not a constitutional violation.
We find, as well, that Mr. Perry had sufficient authority over the suitcase to enable him to consent to a search of it. We note that the search involved herein did not involve the personal effects of any party. The room apparently was used only to effect delivery of the contraband. Although from the viewpoint of his fellow conspirators [3] Mr. Perry was still an active participant in this delivery, when he gave the key to the police officers it was with the specific purpose for them to verify that Mr. Pickering had delivered contraband to that room. Mr. Perry was with the police officers when they observed Mr. Pickering take the suitcase into the room; that suitcase was the container searched to verify Mr. Perry’s information. It is unreasonable to assume that Mr. Perry had the authority to deliver the suitcase and its *895 contents to a fellow member of the conspiracy, but his authority did not extend beyond those individuals.
We find, therefore, that the officers searched the suitcase with the consent of a party who had dominion over it by virtue of his position as a member of the conspiracy. After the officers confirmed that the suitcase contained marijuana, they had probable cause to believe that whoever obtained possession of the suitcase had possession of contraband and, accordingly, probable cause to search the suitcase found in Mr. Davis’s possession. Therefore, we affirm our prior ruling reversing the trial court’s order granting defendant’s motion to suppress the contraband and Mr. Davis’s statement.
RULING GRANTING MOTION TO SUPPRESS REVERSED, REMANDED FOR FURTHER PROCEEDINGS.

. Mr. Davis's consent was an issue before the trial court. Officer Leland Dwight, who was present at the stop, testified that Mr. Davis consented; Mr. Davis himself testified that he did not. Much of Mr. Davis's testimony is simply incredible. However, we find the same result would follow even if Mr. Davis did not consent; therefore, for the purpose of this factual narration, we assume that Mr. Davis did consent.

. The transcript of the hearing on the motion to suppress indicates that Leo Perry’s involvement with the defendants, including the circumstances of his possession of the key, was the subject of a great deal of off-the-record discussion. We believe that Mr. Davis’s testimony that he was supposed to meet Mr. Perry to get the key to the room confirms that Mr. Perry's possession of the key was with the consent of the other conspirators (even if they would not have approved of his allowing police officers into the room). In any event, under Illinois v. Rodriguez, the state need not confirm that an individual has actual authority over the premises to be searched, as long as the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises. 110 S.Ct. at 2801.

. We use the term “conspirators” or "conspiracy" in the factual, not the legal sense.