FILED
**United States Court of Appeals**
**Tenth Circuit**

**January 29, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

LARRY LEE SMITH,

     Defendant - Appellant.

No. 09-8014
(D. Wyo.)
(D.C. No. 1:08-CR-00189-ABJ-1)

**ORDER AND JUDGEMENT**[*]

Before **O'BRIEN**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **GORSUCH**, Circuit Judge.

Larry Lee Smith entered a conditional guilty plea to possession of a sawed-off shotgun which was not registered in the National Firearms Registration and Transfer Record. He appeals from the district court's denial of his motion to suppress, claiming the officers' search exceeded the scope of the warrant. We AFFIRM.

## I.     BACKGROUND

In the late evening of April 5, 2008, Detective Tracy Frisbee of the Rock Springs,

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

Wyoming, Police Department presented the Rock Springs circuit court judge with an affidavit in support of his request for a search warrant. The affidavit stated Frisbee had received reports of a burglary of a white golf cart from the city golf course (listing asset numbers[1] found on the golf cart) and the burglary of an industrial stove from the city's event complex. The affidavit also included a conversation Frisbee had with a confidential informant (the CI). According to Frisbee, the CI told him:

1. He/she has known Larry Smith (AKA Mouse) for about 6 months, (described as a white male, approximately 30 years of age)

2. He/she knows Smith was a co-owner of the Inferno club in Rock Springs.

3. On 4/4/08 he/she met Smith at 1891 Yellowstone Dr., which is a large green storage building.

4. Smith bragged that he burglarized the White Mountain Golf Course and the Sweetwater County Event Complex.

5. He/she saw a large industrial stove/grille inside the building.

6. He/she saw 6-7 people in the building who were dismantling several golf carts and painting the parts.

7. Smith drives a white dually truck with Ohio plates.

(R. Vol. IV at 7.) Frisbee stated he had checked the police department records and found "a Larry Smith with the date of birth of 1/31/80 (28 years old)" who has a current warrant for larceny and an extensive criminal history. (*Id.*) Frisbee averred he had checked the

---

[1] "Asset numbers" are small tags placed on city property. If an item is composed of several parts, each part will have a different asset number. (R. Vol. III at 19.)

address given by the CI and observed the building "to be a large green storage building," he had "observed activity in and about the building" and "a white pickup dually with Ohio license plates parked outside." (*Id.*)

The circuit judge issued a warrant authorizing the search of "the premises known as 1891 Yellowstone, City of Rock Springs, Sweetwater County . . . a . . . large, green steel sided building . . . [for] Golf Carts and Golf Cart parts and Industrial Stove/grille and/or Stove or grille parts." (*Id.* at 5.) Frisbee and eight officers executed the warrant that night. They entered the building and discovered they were in a common area containing a table, a gun safe and numerous boxes. The former offices had been converted to bedrooms. The remainder of the building was a shop area. Smith and six or seven other people were present. Once the area was secured, the officers began searching the shop area. Frisbee saw a golf cart canopy separated from the cart body and placed upside down on the shop floor. The officers also discovered a ball retriever hitch used to connect the ball retrieval mechanism to the golf cart. There were various screws and bolts on the floor. To the side of the shop they observed a large griddle.[2]

After searching the shop area, the officers searched the bedrooms and common area. In the common area, they found the large gun safe secured with a combination lock. When Frisbee asked Smith to unlock the safe, Smith initially stated he did not know the combination. After the officers vigorously persisted in their request, Smith opened the safe. Inside, the officers found a "large volume" of guns. (R. Vol. II at 23.)

---

[2] The griddle was not part of the industrial stove stolen from the events complex. Eventually, the stolen stove was found at another location.

Three of the guns were "sawed-off." (*Id.*) The officers seized the guns as well as other items and transported Smith to the police department. When Smith gave his date of birth, Frisbee discovered the criminal record reported in the affidavit was not the criminal record of the Larry Smith he had in custody. Frisbee arrested Smith for burglary.

On July 17, 2008, Frisbee informed Special Agent David Allen of the Bureau of Alcohol, Tobacco and Firearms they had found several firearms in the search. Allen ran a check and discovered the Remington sawed-off shotgun was not registered in the National Firearms Registration and Transfer Record and no firearms were registered to Smith. Smith was indicted for one count of a violation of 26 U.S.C. §§ 5841, 5845(a), 5861 and 5871 which prohibits a person from receiving or possessing a firearm not registered to him. *See* 26 U.S.C. § 5861.

Smith filed a motion to suppress the evidence found in the search claiming the warrant was without probable cause and the officers exceeded the scope of the warrant by searching the contents of a safe located in the residential part of the building without securing a separate warrant. The district court denied Smith's motion to suppress evidence. Smith entered a conditional guilty plea, reserving the right to appeal the district court's decision. He was sentenced to twenty-four months imprisonment followed by three years of supervised release. On appeal, Smith challenges only the denial of his motion to suppress.

## II.    DISCUSSION

When reviewing the district court's denial of a motion to suppress, "we accept the factual findings unless they are clearly erroneous, and review questions of law de novo."

- 4 -

*United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005). We consider the evidence in the light most favorable to the government. However, the ultimate determination of reasonableness under the Fourth Amendment is a question of law. *United States v. Green*, 178 F.3d 1099, 1104 (10th Cir. 1999).

Smith narrows his argument on appeal and does not challenge the validity of the warrant. Instead, he argues the search of the safe was unreasonable because the original warrant authorized only the search of a storage building, not a separate residential area. Smith relies on *Maryland v. Garrison*, 480 U.S. 79 (1987), for the proposition that when the police discovered the building contained both a residential and shop area, they were required to limit their search to the shop portion of the building and seek a new warrant to search the residential area.

In *Garrison*, the police executed a search warrant authorized for the third floor apartment of a building. After finding incriminating evidence against a tenant living on the third floor, the police discovered the floor actually contained two separate units and they had searched the wrong one. The police discontinued searching the wrong unit and proceeded to focus on the correct unit. *Id*. at 80-81. The tenant moved to suppress the evidence found in the wrong unit claiming the warrant was overbroad. The Court found the search warrant, though overbroad in hindsight, was not retroactively invalidated by the discovery of the separate units. "The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and disclose, to the issuing magistrate." *Id.* at 86. The Court also found the execution of the warrant to be constitutional because the police were unaware prior to entering the building that

there were two separate units on the third floor. It determined "the validity of the search of [the wrong unit] pursuant to a warrant authorizing the search of the entire third floor depends on whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable." *Id.* at 88.

Smith points to the Court's following statement, "if the officers had known, or even if they should have known, that there were two separate dwelling units on the third floor of [the apartment building], they would have been obligated to exclude respondent's apartment from the scope of the requested warrant." *Id.* at 85. According to Smith, because the affidavit described the building as a "storage building" and it was obvious the police had entered a residence, the police should have confined their search to the shop area until a new or modified warrant was issued. (R. Vol. IV at 7.)

Even if we were to assume for appellate purposes the warrant was overbroad, we conclude the officers' failure to realize this overbreadth was objectively reasonable. From the outside, the building itself appeared to be just as described, a storage building with offices. The building is identified by a single address and the residence area was directly connected to the shop area. The safe was located in an area which had been converted into a common area. Further, the common area, residential area and shop were not separate dwellings; Smith had access to the entire property. "[A] warrant encompasses the authority to search the entire building if the person who is the target of the search has access to or control over the entire premises." *Torres v. United States*, 200 F.3d 179, 187 (3d Cir. 1999). Given the nature of the residence as the police encountered it, a search of the entire premises for parts of a golf cart and industrial stove was not

unreasonable.

Similarly, the search of the safe was valid. As Frisbee testified, defendants will often keep mementos of their crimes. (R. Vol. III at 22-23, 46-47.) Because items such as the "asset tags" or some sort of product insignia would have easily fit in the safe, it could be opened. *See United States v. Ross*, 456 U.S. 798, 820-21 (1982) ("A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search."). The district court did not err in refusing to suppress the evidence seized from the safe. *See United States v. Snow*, 919 F.2d 1458,1461 (10th Cir. 1990) (locked safe likely to hold items authorized in warrant).

**AFFIRMED.**

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge