ON MOTION FOR REHEARING
 

 RAMIREZ, J.
 

 This case is before us on the defendant’s motion for rehearing. We grant the motion for rehearing, withdraw our opinion dated August 31, 2011, and substitute the attached corrected opinion in its place.
 

 The State of Florida appeals the trial court’s order granting defendant’s motion to suppress evidence. We reverse because the search warrant included the items that the trial court suppressed.
 

 On September 2, 2008, the Miami Dade Police Department received an anonymous tip about a possible marijuana hydroponics lab located on 19707 SW 84th Place, Cutler Bay (“first property”). The department dispatched Detective Diaz, along with five other officers, to perform a “knock-and-talk” at the location. When the officers arrived at the first property, they noticed a white pick-up truck and a white van parked on the premises. Detective Diaz and the other officers approached the home. As the officers walked to the front door of the residence, they intercepted Evert Soler Vier leaving the residence.
 

 The officers questioned Vier, asking where they could find the owner of the home. Vier explained that the owner could be found inside the residence and that he was only on the property to perform air conditioning repairs. Officers sat Vier on the exterior of the home to await further instruction. The officers then continued towards the residence. As they approached, Diaz noticed the smell of “live marijuana.” Once at the door, Diaz knocked and was greeted by Guillermo Martinez. Diaz explained why he was there and asked Martinez of the whereabouts of the homeowner. Martinez told the officers that he did not live there and did not know what was going on. The officers asked Martinez if they could search the property. Martinez did not consent to the search. Diaz escorted Martinez outside, and sat him next to Vier.
 

 Noting the smell of marijuana, faint humming sounds, and uninterrupted air
 
 *947
 
 conditioning flow, Diaz decided that sufficient indicators of illegal activity were present to seek a warrant. Before leaving the premises, the officers entered the property to perform a protective sweep to ensure no one was present inside the home that could threaten an officer’s or the evidence’s safety. While performing the sweep, officers spotted a third man, Marin, who was then held at gunpoint and asked if he knew where the owner of the home was. Marin explained to the officers that he was inside the home to use the restroom and did not know any information regarding the owner. Marin was made to join the other two men outside the residence.
 

 After performing the protective sweep of the property, Diaz left the residence and sought a search warrant for the first property. In his affidavit for the search warrant, Diaz gave his history of being a narcotics officer, as well as his experiences. Given his years of experience, he stated that the property had several indicators for the presence of illegal activity. Diaz listed the smell of “live marijuana,” humming sounds, and uninterrupted air conditioning flow. Diaz requested that the officers be allowed to search the premises, the house and any vehicles and/or containers located on the curtilage of the property. Magistrate Meyer granted the warrant to search the first property. The warrant allowed the officers to “enter and search forthwith the premises above described, the curtilage thereof, including any vehicles and/or temporary structures within the curtilage, and all persons found on the premises.” (internal quotations omitted). The “premises” was to include “titles, receipts and any other documents and records evidencing illegal activity, or that would lead to the identification of persons responsible for the unlawful possession or distribution of controlled substances.”
 

 Later that day, Diaz returned to the scene with the warrant and was joined by several other officers. The officers secured the three men within two separate squad cars, and then carried out a search of the residence. Inside the home, police officers found thirty-seven pounds of marijuana and evidence of a hydroponics marijuana lab. After searching the residence, the officers used Martinez’s keys, without his consent, to search through his pick-up truck. Inside the truck, the officers found an electric bill for a separate property located at 14957 SW 59 Street (second property) in the name of Malavy Estrada, who was not present at the first property. The officers also found receipts for payment of the second property’s electric bill within Martinez’s wallet. In addition, the officers also searched the mailbox at the first property. The mailbox contained a water and sewer bill for the first property, sealed and addressed to Martinez. The officers, without an additional warrant, opened the sealed mail hoping to establish a time frame for Martinez’s payment history for the first property.
 

 On September 3, 2008, given the billing information found on the first property, Diaz went to perform another “knock-and-talk” at the second property. When the officers approached the property, they noted the smell of “live marijuana” a persistent humming noise, and the constant running of an air conditioning unit. After noticing the same indicators as the first property, Diaz concluded the need for an additional search warrant. Diaz’s affidavit for the warrant relied on the indicators, his experiences as a narcotics officer, and the crux of the affidavit, was the bills found at the first property, both in the mail and in Martinez’s vehicle. The magistrate granted Diaz the second warrant. Later that day, Diaz and other officers returned to search the second property. The officers entered the second property
 
 *948
 
 and found another hydroponics marijuana lab with approximately twenty-eight pounds of marijuana.
 

 Martinez was charged with first-degree trafficking in cannabis based on the evidence found at the first property and was subsequently charged with trafficking in cannabis, use or possession of drug paraphernalia, and grand theft based on the evidence found in the second property. He filed a motion to suppress evidence as to both cases, and the trial court suppressed the evidence seized from the mailbox and the truck at the first property and all evidence found at the second property. With respect to the mailbox and vehicle evidence, the court explained that the officers, when requesting the search warrant for the first property, did not specify either the mailbox or the truck in the affidavit provided for the warrant. Furthermore, the trial court reasoned that the search of the second property was done solely on the basis of the evidence found in the mailbox and truck, thus making it invalid.
 

 On appeal, Martinez concedes that the search of the truck was encompassed within the warrant. The warrant included any vehicles within the curtilage, and the truck was parked within the curtilage. He maintains, however, that the trial court properly suppressed items found in the mailbox and in the truck.
 

 We review the granting of the motion to suppress de novo as the factual findings are not in the dispute.
 
 See State v. Quinn,
 
 41 So.3d 1011 (Fla. 5th DCA 2010). In
 
 United States v. Frank,
 
 No. 99-30118, 2000 WL 420638 (9th Cir. April 18, 2000),
 
 [1]
 
 the circuit court of appeals affirmed the denial of a motion to suppress evidence seized pursuant to a search warrant, stating:
 

 Appellant argues that the trial judge erroneously admitted three “Post-it” notes, a letter, and a phone book under the plain view exception to the Fourth Amendment’s warrant requirement. Although the incriminating nature of each of these items was immediately apparent only after opening or otherwise manipulating them, the search warrant gave the police officers a lawful right to manipulate and examine the evidence because it targeted “books, papers, documents, and/or memoranda concerning the implementation of the crimes of possession, manufacture and mailing of improvised explosive devices.”
 

 Likewise here, the officers seized three individuals at a house where they had just found thirty-seven pounds of marijuana and evidence of a hydroponics marijuana lab. None of the individuals admitted ownership or possession of the house. The warrant allowed the police to search for “titles, receipts and any other documents and records ... that would lead to the identification of persons responsible for the unlawful possession or distribution of controlled substances.” When they found an electric bill inside the truck for a separate property located at 14957 SW 59 Street in the name of Malavy Estrada, who was not present at the first property, this bill could properly be considered as one that would “lead to the identification of persons responsible for the unlawful possession or distribution of controlled substances.” The relevance of that electric bill became more apparent when the officers also properly search for and found
 
 *949
 
 receipts for payment of the second property’s electric bill within Martinez’s wallet.
 

 In addition, the search warrant properly included the premises and curti-lage and “any vehicles and/or temporary structures within the curtilage.” A vehicle found on the premises is considered included within the scope of a warrant authorizing a search of that premises if the objects of the search might be located in a vehicle.
 
 See State v. Ferris,
 
 623 So.2d 752, 753 (Fla. 2d DCA 1993);
 
 State v. Musselwhite,
 
 402 So.2d 1235, 1237-38 (Fla. 2d DCA 1981).
 

 As to the search of the mailbox, the mailbox was clearly within the curtilage and was included in the premises to be searched pursuant to the search warrant. The scope of a lawful search of a fixed premises pursuant to a warrant extends to the entire area in which the object of the search may be found.
 
 See United States v. Ross,
 
 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). This includes the authority to search through any containers that would reasonably contain the items specified in the warrant.
 
 Id.
 
 at 809, 102 S.Ct. 2157.
 
 See also Jackson v. State,
 
 18 So.3d 1016, 1027-29 (Fla.2009) (trial court correctly determined that a locked safe in a motel room may be opened if the items specified in the search warrant could reasonably be concealed in that location). Accordingly, the search of the home’s mailbox was also proper.
 

 Moreover, as in
 
 Frank,
 
 the incriminating nature of the utility bills may not have been immediately apparent, but the officers had been given the right to seize any documents that would lead to the identification of persons responsible for the unlawful possession of controlled substances. These bills satisfied this requirement, which became readily apparent when Martinez’s wallet also contained a receipt for payment of an electric bill for the second property.
 

 We thus reverse the trial court’s order granting Martinez’s motion to suppress evidence.
 

 Reversed and remanded.
 

 [1]
 

 . Although the Ninth Circuit Court of Appeals does not permit citing its unpublished opinion within its jurisdiction,
 
 see
 
 9th Cir. R. 36-3, and case law from federal circuit courts is not binding on state courts,
 
 see State v. Dwyer,
 
 332 So.2d 333, 335 (Fla.1976), we find this opinion persuasive.